## Adam Denmead and William Denmead vs. The Bank of Baltimore.

The lien of the machinist upon a steam-engine built at his shop, and then carried to and put up in a factory, upon which there was a *previous* mortgage, is not entitled to priority over such mortgage.

Under the act of 1845, ch. 176, sec. 4, the lien of the machinist commences as soon as he begins to *put up* the machine, and is preferred to *subsequent* liens and incumbrances only, and not to those which are coeval or simultaneous.

Appeal from the Court of Chancery.

The controversy in this case relates to the proceeds of the sale of a steam-engine, erected in a cotton factory, and constituting part of the motive power thereof. The property, including the land, factory and machinery, was sold by trustees under a decree in equity, reserving all question of priority as to the distribution of the proceeds for future adjudication. The appellee claimed the proceeds of the sale of this engine, under a mortgage of the land and premises, executed on the 4th of March 1841. The appellants, who were machinists, and built and erected the engine in 1848, claimed on the ground of a lien, under the Mechanics lien laws, filed on the 18th of March 1848. The chancellor (*Johnson*) decided in favor of the mortgagee, and from this decision the present appeal is taken. The facts of the case are sufficiently stated in the opinion of this court, and more fully in the report of the chancellor's opinion, in 3 *Md. Ch. Dec.*, 208.

The cause was argued before Le Grand, C. J., Eccleston and Tuck, J., and in the course of the argument all grounds of claim on the part of the appellants were waived, except that of the original lien under the Mechanics lien laws.

*J. Mason Campbell* and *John V. L. McMahon* for the appellants. .

The machine is made subject to a lien by the act of 1845, ch. 176, sec. 4. That lien commences as soon as the machine commences, just as in the case of the building of a house, "the lien of the mechanic attaches as soon as the house

is begun." This is the law laid down by this court in *Wells & Miller, vs. The Canton Co., et al.*, 3 *Md. Rep.*, 241. When the steam-engine went to the Pocahontas factory it went with the lien on it. On any other construction of the act, giving liens on machines, the act is illusory. Machinists do not make machines to be put up on their own premises, or kept in their own possession, but to leave their possession and to be erected elsewhere. If the person who orders them can, by the single act of their removal to, and erection upon, mortgaged property, strip the manufacturer of his lien, the law would be a nullity. The chancellor's view, that because a machine is declared to be subject to a lien in like manner as buildings, therefore, a prior mortgage on the land will precede the lien on a machine, as it would do the lien on a house, is, with great respect, submitted to be wholly unsound. The house becomes part of the land, and can have no separate existence, and therefore there may be a mortgage on the subject of the lien (which covers land as well as house) prior to the lien. But the machine has a separate existence apart from and independent of any land, and in consequence the law gives a lien on it exclusively, and not, as in the case of a house, upon the house *and* the land which is essential to its support and being. Unless then there can be a mortgage of a machine before it is constructed, there can be no incumbrance on it prior to the mechanic's lien. 1 *Hals. Ch. Rep.*, 485. The 4th section of the act of 1845, contains the whole case. *Machines* are the subject of the lien: it embraces *every machine*. The machinist is to have the lien in the same manner as builders and material-men have theirs upon *buildings*. It is the act of construction, erection and repair, which creates the lien, and this lien begins on the machine from the moment it is begun to *be put up*. It is impossible, therefore, that there can be any lien *anterior* to this. If the moment the machine is *annexed* to the freehold it becomes covered by the mortgage, then the very act which *creates* the lien works its *destruction*, and, so far as mortgaged property is concerned, the law giving the lien is a nullity. Suppose the case of movable machines, such as threshing machines, locomotives, &c.—

when does the lien of the mechanic, as to them, begin, and how is it affected by their removal and use? If such a machine, after its sale, be seized under execution in the hands of the purchaser, would not the lien of the mechanic be preferred to that of the judgment creditor under his *fi. fa.?* Again, suppose this engine had been taken from the shop of the Denmeads, and carried to, and *left* upon, the mortgaged premises, without being put up in the factory, would the appellant have lost his lien by this act? But again, if *annexation* to the freehold merges the lien, is it not *revived* when *disannexed?* and does not the separate sale of the machinery in this case, with the reservation of all questions of priority, work such a severance as to revive the lien of the mechanic?

*J. N. Steele* and *Jonathan Meredith* for the appellee:

The concession, that the machine in question is a fixture, and that independently of any act of Assembly, the mortgage would attach thereto *from its date*, relieves the case of much argument. The claim of the machinist, then, is purely a statutory one, founded upon no equity, but rather upon a policy of doubtful expediency. The original lien law of 1838, ch. 205, anxious to protect *existing liens*, prefers the mechanic's lien *only* to such as attach *subsequently* to the *commencement* of the building. This law, therefore, concedes, that there may be *prior liens*, and provides for their protection, and what can such liens be but *mortgages* and *judgments?* Then came the act of 1845, ch. 176, which gives to the machinist a lien upon the machine "in *like manner* as buildings are made subject under the provisions of this and the *original act*, to which this is a supplement." The lien, therefore, of the machinist, is preferred only to such liens as attach *subsequently* to the *commencement* of the machine. In the language of this court, in the case of *Wells & Miller, vs. The Canton Co.*, "the claim of a mechanic upon a machine *must commence as soon as he begins to put up the machine*," and is preferred *only* to such liens as *subsequently attach* thereto. But the moment the machine was begun to be put up on the property it became a fixture, a part of the realty, and the lien of the mortgage at-

tached to it from the date of the mortgage, or at least it attached *simultaneously* with the lien of the mechanic. Upon no construction can it be said, that the lien of the mortgage attached *subsequently* to that of the mechanic, and therefore the latter cannot be preferred to the former.

LE GRAND, C. J., delivered the opinion of this court.

This appeal is from an order of the chancellor overruling exceptions to the report, and accompanying accounts distributing a fund which had been created by a sale of property on which there were various liens. It is only necessary to notice two of them, as they are all that are involved in the present inquiry.

It appears from the record, that, on the 4th of March 1841, the Powhattan Manufacturing Company being indebted to the Bank of Baltimore in a large sum of money, executed a mortgage of certain lands in Baltimore county, "together with all the buildings and improvements thereon," including "the mill, factory, dwelling and other houses; and all the machinery and fixtures, in said mill or factory," &c., as a security for said indebtedness. On the 15th November 1845, the mortgage debt being unpaid, the company conveyed the premises to William Mason, who, in the year 1847, commenced the erection of a large mill on the property called the Pocahontas mill. In the year 1848, he caused suitable machinery to be constructed by different mechanics to be placed therein; and among others, by the appellants, who manufactured and furnished the mill with a steam engine, with boilers, tanks, and other usual appurtenances. About this time, Mason formed a co-partnership with William Mason, Jr., and H. A. Barling, who with him carried on the manufactory until 1849, when they were compelled to suspend their business. On the 8th of September of that year, they conveyed to Messrs. McKim and Kennedy, on certain trusts, the lands, the two factories, and all the machinery, fixtures, &c., belonging to them. On the application, by bill of complaint of these trustees, the property was sold, reserving for future adjudication all questions of priority.

It appears, from the testimony, that some time in 1848, the appellants sent the machinery, which they had made in the city of Baltimore, to the country to be put up in the factory; that they filed their lien on the 18th of March 1848, on which *scire facias* issued in July 1849, and obtained judgment in September of the same year.

The question which we have now to determine is, which of these claimants is entitled to priority?

A great number of important question were suggested when the argument commenced, but all, save one, abandoned before it was concluded. It was conceded by the appellants. 1. That the machinery put up by them, so soon as it was attached to the building, became fixtures. 2. That it might be conceded that the *judgment* obtained by them was not in strict conformity with the acts of Assembly giving liens to mechanics and others, and therefore, that the judgment did not, of its own force, give a prior lien to the appellants. The counsel for the appellants desiring the case to be decided in view of these concessions, in regard to the propriety of which we wish to be understood as pronouncing no opinion, the case was submitted on the ground that, "even if the judgment is not held conclusive, the original lien itself is of sufficient force to bind the proceeds of the steam engine, &c., in favor of the appellants."

This being so, the whole case is narrowed down to this: does the claim of the appellants, filed in March 1848, *so far as the machine is concerned,* give to the appellants a priority over the appellees who claim under a mortgage executed in 1841?

This is a question which must be determined by our acts of Assembly. It is not only not denied, but, it is conceded, that, independently of our legislation, the mortgage held by the appellees would attach *from its date* to any fixtures which might be affixed to the premises covered by it. But, it is insisted, the common law principle is modified by our acts of Assembly.

The first act relating to liens, that of 1838, chapter 205, does not embrace *machines;* but that of 1845, chapter 176, does. Its 4th section is in these words: "That every machine hereafter to be erected, constructed or repaired, within the

city of Baltimore, shall be subject to a lien, in like manner as buildings are made subject under the provisions of this, and the original act to which this a supplement."

This section contemplates a lien on machinery arising in three different modes: 1st, where the machine is *erected* in a house or affixed to it or the soil; 2nd, where it is *constructed* and is movable in its operations, such as a locomotive, a threshing machine, and the like; and 3rd, where the machine is *repaired*, whether it be attached to the freehold, or movable in its operation and use.

In the case now before us the lien arises under that part of the act which refers to the *erection* of the machine. In the case of *Wells and Miller vs. The Canton Co., et. al.,* 3 *Md. Rep.,* 241, this court said, in construing the 4th section of the act of 1845, chapter 176, that *"the claim of the mechanic upon a machine must commence as soon as he begins to put up the machine."* The evidence in this case shows, that the machine erected by the appellants was not begun to be put up until the year 1848, and under the decision to which we have adverted, the lien of the appellants did not commence until that time. The section under which a lien on a machine is given, provides, such machines "shall be subject to a lien *in like manner as buildings are made subject under the* provisions of this and the original act to which this is a supplement."

Now it is provided, that the lien acquired on a building for work done or materials furnished "shall only be preferred to every other lien or incumbrance which attached upon such building, *subsequent* to the commencement of the same." Now were it even admitted that the common law principle, which would make the mortgage take effect from its date on all fixtures subsequently attached to the freehold, did not operate, it cannot, in our opinion, reasonably be denied, that it will operate from the *very moment* when anything is affixed to the land, and this being so, the machinist's claim cannot have a priority over the mortgage of an older date, because that priority is only over liens "subsequent," and not to those coeval or simultaneous. The lien of the mechanic is dependent wholly on the statute, and it defines the priority of such lien to be

only over "*subsequent*" liens or incumbrances. Here the lien of the appellee is, in our judgment, clearly not subsequent to that of the appellants, and as a consequence must have a preference over the latter.

*Order affirmed with costs.*