# New England Car Spring Company *vs.* The Baltimore and Ohio Rail Road Company.

*Coal cars* are not subjects of mechanics' liens under the act of 1845, ch. 176; the word *"machine"* used in that act applies only to *fixed* or *stationary* machinery, and does not extend to *movable* machines.

Appeal from the Superior Court of Baltimore city.

This was a *scire facias* upon a *mechanics' lien,* filed by the appellant against *fifty cars or coal hoppers,* and against Scott & Bolster and the appellee, the owners or reputed owners thereof, claiming the sum of $2278.80 for materials furnished

v. 11

New Engiand Car Spring Co. *vs.* Balto. & Ohio R. R. Co.

and used in the construction of the same. Plea, *non assumpsit*.

*Exception.* By a statement of facts it was admitted, that the plaintiffs, a corporation of New York, sold and delivered to Scott & Bolster, machinists of the city of Baltimore, two hundred *car rubber springs* for $2278.80, which still remains due and unpaid; *that* the *car-springs* so furnished were intended for and used by Scott & Bolster in the building and construction of *fifty coal cars,* built by them under a contract for the Baltimore and Ohio Rail Road Company, each of the cars having four of these springs in or on it; *that* these cars were furnished and delivered to the rail road company, and are now in their possession and in use on their road; *that* the body of each car is of sheet iron, and is divided into three compartments, the upper part of which is cylindrical and the lower part in the form of a frustum of a cone, the under edge of which has a flange secured upon it, to which a movable bottom is attached; this bottom is made movable in order to discharge the load through the aperture left by removing it; and each car has one or more rubbers or brakes to regulate its speed. It was also admitted, that due notice of the filing of the lien was given to the rail road company.

The plaintiff then prayed the court to instruct the jury, that if they believe the facts stated in the proceedings and statement of facts given in evidence, then the plaintiffs are entitled to recover the amount of their claim; but the court, (FRICK, J.,) rejected this prayer and instructed the jury, *"that their verdict must be for the defendant;"* to which opinion and instruction the plaintiffs excepted, and the verdict and judgment being against them, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Llewellyn F. Barry* for the appellant.

The act of 1838, ch. 205, sec. 1, subjects "every *building,*" erected within the city of Baltimore, to a lien for the payment of all debts contracted for work done or *materials furnished*

for or about the erection or construction of the same." By the act of 1845, ch. 176, sec. 4, it is enacted, that *"every machine* hereafter to be erected, constructed or repaired, within the city of Baltimore, shall be subject to a lien in like manner as buildings are made subject, under the provisions of this and the original act;" and by section 5: *"That any person or persons furnishing* work or *materials,* or both, upon the compliance with the requisitions of this and the original act, shall be entitled to the benefits and advantages of said acts." By the act of 1845, ch. 287, sec. 1, it is declared: "That in the construction of the original lien act, and of its supplement, the same effect shall be given as to acts of Assembly which confer a general jurisdiction, or are remedial in their nature;" and by sec. 2nd: "That the said acts of Assembly shall extend to all work done or *materials furnished,*" &c.

The question of the validity of the lien, in this case, depends on the construction to be given to the above laws and the meaning of the word *"machine,"* as used in the 4th sec. of the act of 1845, ch. 176, whether it embraces the *coal cars* on which this lien was laid. On the construction of these laws we insist:

1st. That it is the duty of the court to give them such a construction as will suppress the mischief and advance the remedy. *Dwarris on Statutes,* in 9 *Law Lib.,* 694, 697, 718, 720, 721, 722. 1 *Bl. Com.,* 87. Applying this rule of construction the plaintiffs are found to be within the mischief, for the remedy of which these lien laws were passed, and are, therefore, within the spirit of the act. No one can believe, that the legislature, in passing these laws, would designedly exclude the mechanic, who contributed work or materials for coal cars, from the benefit of a lien, while they were giving that privilege to his fellow mechanic, working, perhaps, by his side, under the same roof, on other machines. "A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter." *Bac. Abr., Art. Statute, Letter J., sec. 5.* "In order to form a right judgment, whether a case be within the equity of a statute, it is a good way to suppose the law-maker present, and that you have asked him the question: Did you intend to

comprehend this case? then you must give yourself such answer as you imagine he would have given." *Ibid., sec.* 6. By this rule the appellant's case is certainly within the equity of the lien acts. This court gives a very liberal construction to these acts, *ut reus magis valeat quam pereat.* 3 *Md. Rep.,* 168, *Okisko Co. vs. Matthews.*

2nd. The appellants are not only within the spirit of these, but are also within the letter, these coal cars being within the strict and proper meaning of the word, *"machines."* For the meaning of the word *"machine"* see *Webster's Dict.,* 683, *Art. "Machine"* and *"Mechanics." Comstock's Philosophy, (subject, "Mechanics,")* 64, 65, 66, 92. *Rees' New Cyclopedia, Vol.* 22, *part* 2, *title "Machine." Penny Cyclopedia,* 247, *(Art.) "Machine." Oswald's Etymological Dict., (Art.) Machine. Roget's Thesaurus,* 633. *Appleton's Dict. of Mechanics,* 292. *Worcester's Dict., (Art.) Machine. Johnson's Dict., (Art.) Machine. Richardson's Dict., (Art.) Machine. Barclay's Dict. by Dewhurst,* 571, *(Art.) Machine. Universal Technological Dict., by Crabb, (Art.) Machine. Edinburgh Encyclopedia, (Art.) Machine.* Builders of cars, particularly of iron coal cars, are invariably called *"*machinists." The word machine is a general and comprehensive word, there being many *species* of which it is, as it were, the *genus*. In this sense the Legislature used it in the act of 1845. This appears also from the fact of their using but one word to embrace the subjects liable to lien. In the original act they used the word "building." In the amendment of 1845, they used the word "machine." Each being the broadest and most comprehensive general term known to the English language, applicable to the subject. In this sense, too, we find it (from the authors above cited) used by philologists, lexicographers, learned writers on mechanics, philosophy and the sciences; and also by those classic writers who are authority in the right use of words and their meaning, and who are recognized as models of taste and propriety, and have contributed to the elevation and formation of the language in which they wrote. Thus Virgil elegantly applies the word to that invention of Minerva, the Trojan horse:

—Scandit fatalis *machina* muros, fœta armis.

The meaning of this word machine is scarcely now a mooted question, as the Supreme Court of the United States have decided its meaning, and in accordance with that contended for by the appellants. The word occurs in the *patent laws* of the United States, Act of Congress, July 4th, 1836, ch. 357, sec. 6. By this section, "any person or persons, having discovered or invented any new and useful art, *machine,* manufacture, or composition of matter, or any new and useful improvement on any art, &c., may obtain a patent therefor." Now cars are not only patentable, but these identical cars are the subject of a patent. Suits have been tried in the Supreme Court in regard to an alleged violation of their patent right. The right to patent them as machines has never been questioned, but repeatedly recognized by that court. See *Winans vs. Denmead,* 15 *How.,* 339, where a description of the cars appears corresponding with that in the statement of facts in this case, but fuller and more minute, and containing an account of the principles of the invention, and the advantages of the machine over others. No patent can be obtained unless the subject matter is included within the meaning of one of the four words used in the act of Congress, viz: 1. Art. 2. Machine. 3. Manufacture. 4. Composition of matter. The meaning of each one of these words has been given by the elementary writers on the law of patents, both in this country and in England, and recognized and adopted by the decisions of the courts. These cars do not come within the definitions of the terms, "art," "manufacture" or "composition of matter," as given by these writers and decisions. See *Curtis on Patents, secs.* 90, 91, 92, 102 and *note* 2, 103. 1 *How.,* 204, *McClurg vs. Kingsland, et al. Webster's Patent Cases,* 512, 517, *Cornish vs. Keene.* There remains then but one other term, used by the act of Congress, under which cars are patentable, viz: "*Machine.*" In *Curtis on Patents, sec.* 93, it is said: "A machine, to be the subject of a patent, must be a particular construction of mechanism, containing the improved method of producing the old effect, or the method of producing a new effect. If the subject of the invention or discovery is not a mere function, but a function embodied in

some particular mechanism, whose mode of operation and general structure are pointed out, and which is designed to accomplish a particular purpose, function or effect, it will be a machine in the sense of the patent law. A machine is rightfully the subject of a patent when well known effects are produced by machinery entirely new in all its combinations, or when a new or old effect is produced by mechanism, of which the principle or *modus operandi* is new." In 15 *How.*, 267, *Corning vs. Burden,* Justice Grier, delivering the opinion of the court, gives the definition of this word thus: " *The term machine includes - every mechanical device, or combination of mechanical powers and devices, to perform some function and produce a certain effect or result.*"

These definitions of the word machine, will include in their meaning these cars. They are a "mechanical device, or combination of mechanical powers and devices, (i. e., the lever, wheel, axle and inclined plane,) "to perform some function and produce a certain effect or result," (i. e., to carry coal or heavy lumps more securely and in larger quantities, in proportion to the weight of the car, than can be done in any other manner, or by any other machine.) They are patentable as machines, and were patented as such. In *Winans vs. Denmead,* 15 *How.*, 330, Justice Curtis, in delivering the opinion of the court, as also the patentee in his specification, is continually calling these very cars *machines,* and throughout his opinion, the learned justice uses the words invention, structure, device, machine, one for the other as synonyms, and designates these cars by each of these terms. If these cars reap the benefit of, and partake of advantages as machines, they must also assume the responsibilities of machines. If they are machines under the patent laws, they must be machines under the lien laws.

3rd. Again, the appellants contend that the court below erred in taking the case from the jury, to whom questions of fact belong. Whether a car is a machine or not, is a question of fact. Under the statute of Missouri, which gives a lien on boats and vessels, and their appurtenances, it was held by the court that it was for the jury to determine what are appurte-

nances. 9 *Missouri*, 629, *Amis vs. Steamboat Louisa.* So, by like reasoning, when a statute gives a lien on machines, it is for the jury to determine what are machines.

*Chas. J. M. Gwinn* and *John H. B. Latrobe* for the appellee, argued:

1st. The rejection of the appellant's prayer was right, because even if the particulars set forth in the statement of facts were sufficient to authorise the jury to find from them that the coal cars in question were machines, the prayer ought to have left it to the jury to find the further fact, that such cars so constructed *were, in point of fact, machines,* and not have taken this fact from the jury and reserved it to the court, as it practically does. Whether these cars are machines or not, if there is any evidence on this point, is a matter of fact for the *jury,* and for the *jury alone.* How can the court know, *judicially,* that the mechanical elements described in the agreement as in combination, do constitute the car into which they enter, a *machine?* For taking this fact from the jury, the prayer was properly rejected. 5 *H. & J.,* 486, *Hayes vs. Lusby.* 11 *G. & J.,* 367, *Abell vs. Harris.* 12 *Do.,* 236, *Gray vs. Crook.* 15 *Ala.,* 378, *Orr vs. Burwell.* 4 *How.,* 403, *Stimpson vs. Westchester Rail Road Co.* 5 *Do.,* 4, *Wood vs. Underhill.* 14 *Do.,* 226, *Silsby vs. Foote.*

2nd. The court was also right in instructing the jury that their verdict must be for the defendant. For there was *no evidence* to go to the jury, in point of fact, that *these coal cars were such machines* as were contemplated by the act of 1845. To make any article in *its entirety, as a whole,* a machine, it must, *as a whole,* apply or regulate moving power. It does not become a machine, as a whole, because of a mechanical contrivance attached to it, *unless the purpose of such mechanism is an essential part of the main object of its construction, and not a mere addendum to facilitate secondary uses.* For a definition of the word "*machine,*" see Richardson's and Webster's dictionaries, and Tomlinson's encyclopedia. These cars do not meet the definitions cited by the appellant from *Curtis on Patents,* 81 to 93, nor from the case of *Corning vs. Bur-*

*den,* 15 *How.,* 252, any more than a water-bucket with a more convenient spout, or any mere contrivance adapted to a common utensil would. And it is equally clear that the point is not affected by the statement, in the argument of the appellant, that these cars have been patented as *machines.* There is no proof of this in the case, and if there was, it would not affect the meaning which the word would receive when construed as occurring in the act of 1845.

3rd. It is respectfully urged upon the court (notwithstanding some observations which have fallen from them) that the law of 1845, ch. 176, sec. 4, does not relate to machines of this character, but to *stationary* machines connected with the *realty.* And, therefore, even if we concede that these coal cars were machines, the court below was right in its instruction, that the defendant was entitled to a verdict. The act of 1845, ch. 176, is a supplement to that of 1838, ch. 205. It is an undoubted rule of construction, that the law of 1845 must be so construed that no part of the act of 1838, to which it is a supplement, shall be *superfluous, void,* or *insignificant.* *Bac. Abr. Title Statute, Letter J.* 2 *Cranch,* 386, 399, *Fisher vs. Blight.* 4 *G. & J.,* 128, 152, *Canal Co. vs. Rail Road Co.* This rule of construction cannot be applied to the act of 1845, without making it apparent that the law contemplated only machines which were attached to the realty, *as permanent and located fixtures,* otherwise the sections from the 2nd to the 9th, inclusive, in the act of 1838, are totally superfluous, void and insignificant. There was a manifest reason for extending the benefit of the lien law to those machines which become fixtures upon land, and which required land to enable them to be worked. But if the rule of construction insisted on by the appellant is sound, a *watch* sent to be *repaired,* and returned to the custody of its owner, may be made the subject of this proceeding; for a *watch* is undoubtedly a *machine.* Can it be supposed the Legislature contemplated such results? The very writ of execution indicates that machines which were annexed to the *realty* were in contemplation of the Legislature. A writ of *levari facias* at com-

New England Car Spring Co. *vs.* Balto. & Ohio R. R. Co.

mon law concerned the *realty*, and its adoption into our law indicates the intention of the Legislature so to apply it.

BARTOL, J., delivered the opinion of this court.

The question presented for decision by this appeal is, whether certain "coal cars" described in the statement of facts found in the record, are the subject of mechanics' lien, under the provisions of the act of 1845, ch. 176, and involves the construction of that act, and of the act of 1838, ch. 205, to which it is a supplement.

Although those acts have been the subject of several adjudications in this court, the question presented by the record has not before been directly decided. In the case of *Wells & Miller vs. The Canton Company*, 3 *Md. Rep.*, 241, and the case of *Denmead vs. The Bank of Baltimore*, 9 *Md. Rep.*, 179, which were cases of liens on machinery, under the act of 1845, the machinery, which was the subject of the lien, was of a fixed or stationary kind.

Admitting the *coal* cars in this case to be, in point of fact, *machines*, we are of opinion that they are not such machines as are contemplated by the act of 1845. The language of the 4th section of that act is: "That every machine hereafter to be erected, constructed, or repaired, within the city of Baltimore, shall be subject to a lien, *in like manner as buildings are made subject*, under the provisions of this and the original act to which this is a supplement."

It has been argued that the word machine, in this section, being used without qualification, is extensive enough to embrace all kinds of machines, as well those which are movable as those which are fixed or stationary.

Such a construction would be fraught with the most mischievous consequences. The word machine, if to be taken in its most extended signification, means every thing which acts by a combination of the mechanical powers, however simple or complex it may be. The ingenious argument of the appellant's counsel, and the authorities he cites are sufficient to demonstrate that this word, if to be understood in its broad general sense, will not only comprehend locomotives,

threshing machines, and such like, but that all the various machines used in agriculture and commerce, carriages and vehicles in ordinary use, even watches and clocks, and all the machines in domestic use, would be alike embraced in the terms of the law.  Can it be for a moment supposed that the legislature designed to subject all these to the operation of the lien laws?  Such things, like the coal cars in question, are mere chattels which pass by delivery; a construction which would embrace them within the provisions of the lien laws, would interrupt the daily transactions of trade in such articles, and render the rights of property in them insecure.

In looking at the provisions of the lien laws, and applying to them the safe and well-established rules of construction which are to govern us, in arriving at the intention of the legislature, we are the more convinced of the propriety of limiting and restraining the meaning of the word *machine,* used in the law to fixed or stationary machinery.  We adopt the language employed by Judge Buchanan, in delivering the opinion of the Court of Appeals, in the case of the *Canal Co. vs. The Rail Road Co.,* 4 *G. & J.,* 152: "Statutes should be construed with a view to the original intent and meaning of the makers, and such construction should be put upon them as best to answer that intention, which may be collected from the cause or necessity of making the act, or from foreign circumstances; and when discovered, ought to be followed, although such construction may seem to be contrary to the letter of the statute.  That, therefore, which is within the letter of the statute, is sometimes not within the statute, not being within the intention of the makers." ·

We are to inquire, "what was the mischief and defect against which the common law did not provide?" and which the statute was designed to cure; and "it is the duty of the court to make such construction as shall suppress the mischief and advance the remedy." *Dwarris on Stat.,* 9 *Law Lib.,* 694. In this case the mischief to be cured was, that by the common law, the mechanic who erects, constructs or repairs fixed or stationary machinery, like him who builds a house, is without that safe security for compensation which a

specific lien on the house or the machine would afford; the design of the act of 1838, and its supplements, was to afford that security. But with reference to movable machines, the common law affords ample and complete security to the mechanic, by leaving in him the right of property, or in the case of repairs done, giving him a lien thereon, while they remain in his possession; and he has the right to retain the possession and his right of property, or his lien, until his claim for construction or repair is paid. There is no sound reason for imputing to the Legislature the intention of extending the operation of the lien laws to cases which were not within the mischief sought to be remedied. We have not failed to consider the provisions of the act of 1845, ch. 287, which directs that the lien laws under consideration shall receive a liberal construction, as remedial acts. But after mature reflection, we are constrained to adopt the conclusions already stated as entirely consistent with the rules of construction governing the subject.

The act of 1845, makes machines subject to a lien, *"in like manner as buildings are made subject, under the provisions of this and the original act, to which this is a supplement.* The original act of 1838, and the supplement, must therefore be construed together, as one act; and looking to their various provisions, the manner in which the lien is to be asserted, the mode and time prescribed for filing the claim of record, and the form of the action and execution for its recovery, we cannot hesitate in saying, that many of the provisions of the law are inapplicable to movable machines, and conclusively show that the legislature did not intend to embrace them within its operation.

These conclusions are at variance with some of the language employed in the opinion of this court, in the case of *Denmead vs. The Bank of Baltimore;* and while we adhere to the judgment pronounced by the court in that case, we are compelled to say, that a careful consideration of the question before us, has convinced us that the construction of the word *machine,* in the act of 1845, as extending to such as are *"movable in their operation and use, such as a locomotive, a*

*threshing machine, and the like,*" is not justified by sound rules of interpretation, or in accordance with the intention of the legislature. This question did not arise in the case just cited, and its decision was not involved in the judgment pronounced by the court.

In the decision of this case, we have considered the question presented as if the *coal cars*, which are the subject of the lien, were admitted to be *machines*—a question, however, which we do not mean to decide—and being of opinion that they are not within the provisions of the act, subject to mechanics' lien, we concur in the propriety of the instruction given to the jury by the Superior Court, and affirm the judgment.

*Judgment affirmed.*