923 A.2d 1023

## JACKSONVILLE MACHINE AND REPAIR, INC.

v.

## KENT SAND AND GRAVEL, LLC.

**No. 0583 Sept. Term, 2006.**

Court of Special Appeals of Maryland.

May 24, 2007.

Jason L. Allison, Elkton, for appellant.

Dwight E. Thomey (Baker, Thomey & Emrey, PA, on the brief), Elkton, for appellee.

Panel: SALMON, ADKINS and BARBERA, JJ.

ADKINS, J.

This appeal challenges a ruling by the Circuit Court for Kent County that a dredge erected by appellant Jacksonville Machine and Repair, Inc. ("Jacksonville Machine") inside a quarry operated by appellee Kent Sand and Gravel, LLC is

not subject to a mechanic's lien because it is not a "machine" within the meaning of Md.Code (1974, 2003 Repl.Vol., 2006 Cum.Supp.), section 9–102(c) of the Real Property Article (RP). We shall hold that the dredge may be a lienable machine, although we do not decide on this incomplete record whether a lien is warranted in this instance.

## FACTS AND LEGAL PROCEEDINGS

Kent Sand and Gravel contracted with George Waldreck of Jacksonville, Florida, for the construction and installation of a "70′ × 28′ × 5‴" dredge at an enclosed gravel quarry in Galena, which is leased by Kent Sand and Gravel. In turn, Waldreck subcontracted with Jacksonville Machine, also of Jacksonville, Florida, for construction services and materials to install and repair the dredge.[1]

Waldreck allegedly failed to pay Jacksonville Machine for invoiced materials and work performed on site from May 16 through September 20, 2005. Jacksonville Machine served Kent Sand and Gravel with notice of its intent to seek a mechanic's lien. Waldreck died shortly thereafter.

In February 2006, Jacksonville Machine filed a complaint to establish a $119, 799. 68 mechanic's lien against the dredge under RP section 9–102(c). The Circuit Court for Kent County issued a show cause order. At the conclusion of the show cause hearing, the circuit court dismissed Jacksonville Machine's complaint. This timely appeal followed.

## DISCUSSION

### Standard Of Review

In *Gravett v. Covenant Life Church*, 154 Md.App. 640, 645, 841 A.2d 342 (2004), we set forth the standard by which we review the dismissal of a mechanic's lien complaint:

---

1. According to Kent Sand and Gravel, "the dredge has never been finished, even though the full contract price has been paid for the dredge. That's not [Jacksonville Machine's] fault[,]" however.

"The proper standard for reviewing the grant of a motion to dismiss is whether the trial court was legally correct. In reviewing the grant of a motion to dismiss, we must determine whether the complaint, on its face, discloses a legally sufficient cause of action." In reviewing the complaint, we must "presume the truth of all well-pleaded facts in the complaint, along with any reasonable inferences derived therefrom." "Dismissal is proper only if the facts and allegations, so viewed, would nevertheless fail to afford plaintiff relief if proven." (Citations omitted.)

### "Machine"

 A mechanic's lien exists purely by virtue of statute. It follows, therefore, that there can be no lien for anything which does not fall within the statutory provision. This Court has no power to extend the mechanic's lien law to cases beyond its obvious design and plain requirements. Despite these restrictions, however, the statute is to be construed in favor of those for whom it was enacted.

5500 *Coastal Hwy. Ltd. P'ship v. Elec. Equipment Co., Inc.,* 305 Md. 532, 536–37, 505 A.2d 533 (1986).

The type of property that may give rise to a mechanic's lien includes, *inter alia,* "buildings" [2] and "machines." Our con-

---

2. With respect to buildings, subsection 9–102(a) provides:

(a) *Buildings.*—Every building erected and every building repaired, rebuilt, or improved to the extent of 15 percent of its value is subject to establishment of a lien in accordance with this subtitle for the payment of all debts, without regard to the amount, contracted for work done for or about the building and for materials furnished for or about the building, including the drilling and installation of wells to supply water, the construction or installation of any swimming pool or fencing, the sodding, seeding or planting in or about the premises of any shrubs, trees, plants, flowers or nursery products, the grading, filling, landscaping, and paving of the premises, the provision of building or landscape architectural services, engineering services, or land surveying services, and the leasing of equipment, with or without an operator, for use for or about the building or premises. . . .

cern here is with a machinery lien, which is authorized by RP subsection 9–102(c):

(c) *Machines, wharves, and bridges.*—**Any machine,** wharf, or bridge **erected, constructed, or repaired within the State may be subjected to a lien** in the same manner as a building is subjected to a lien in accordance with this subtitle. (Emphasis added.)

 Dating back to 1845, the General Assembly has permitted liens against machines via substantially identical language. *See Denmead v. Bank of Baltimore,* 9 Md. 179, 183–84 (1856); 1845 Md. Laws, ch. 176. In this case, we must decide whether a dredge erected inside a gravel quarry might be a lienable machine. Although the Code does not define "machine," and there is limited precedent regarding machinery liens, we conclude that a dredge may be lienable if it remains substantially fixed in one location on the premises in performing dredging operations, but remains a removable chattel.

 When interpreting an undefined term in the mechanic's lien statute, we generally construe the word in its commonly understood and broad sense. *See, e.g., Freeform Pools, Inc. v. Strawbridge Home for Boys, Inc.,* 228 Md. 297, 301, 179 A.2d 683 (1962) (interpreting "building" before the term was defined by statute). By doing so, we promote the purpose of a mechanic's lien, which is "to protect materialmen who are not in a position to protect themselves if the owner negligently pays the contractor without first ascertaining that the materialmen have been paid[,]" and indirectly, "to encourage construction" by such assurance of payment. *See Dickerson Lumber Co. v. Herson,* 230 Md. 487, 491, 187 A.2d 689 (1963); *Barry Props., Inc. v. Fick Bros. Roofing Co.,* 277 Md. 15, 18, 353 A.2d 222 (1976).

 Maryland cases addressing whether certain items of personal property qualify as a lienable machine are old but instructive. As a general rule, they teach that equipment is not lienable as a machine once it becomes a permanent fixture or when it remains mobile in its operational use so that it may be removed intact from the premises. Yet a machinery lien

may attach to chattels that lack mobility when in use, but otherwise have "movability" in the sense that the mechanic may disassemble and/or detach the item for use in another location.

In *Stebbins v. Culbreth,* 86 Md. 656, 39 A. 321, 322 (1898), the Court of Appeals held that a machinery lien could not be claimed on a hotel steam-heating apparatus, consisting of a boiler and furnace, built in brick and cement, with pipes and radiators extending throughout the building, because

> [t]his structure is a part of the building, and is in the nature of a permanent fixture, and necessary for the comfortable, convenient, and customary use of the building as a hotel. If removed, it would not only impair the use of the hotel, but would practically destroy the purposes for which the building was used. The legislature could never have intended to give a lien upon such a structure . . . .

*Id. See also Shacks v. Ford,* 128 Md. 287, 97 A. 511, 512 (1916) (hot water heating system installed in apartment building as a fixture was not a lienable machine). Thus, the only lien available in such circumstances would be a lien against the building. *See Stebbins,* 39 A. at 322. Of course, the claimant is only entitled to such a lien if the value of the work and materials exceeds 15% of the entire value of the building. *See id.;* RP § 9–102(a).

The other end of this spectrum is explored in detail by *New England Car Spring Co. v. B. & O.R. R. Co.,* 11 Md. 81 (1857). In that seminal case, the Court of Appeals held that, although coal cars used by railroads are machines, "they are not such machines as are contemplated" by the mechanic's lien statute, because they remain mobile throughout their operation. *See id.* at 89. Despite the general rule of liberal construction, the Court narrowed the interpretation of "machine."

> The word machine, if to be taken in its most extended signification, means every thing which acts by a combination of the mechanical powers, however simple or complex it may be . . . . [T]his word, if to be understood in its broad general sense, will not only comprehend locomotives, threshing ma-

chines, and such like, but that all the various machines used in agriculture and commerce, carriages and vehicles in ordinary use, even watches and clocks, and all the machines in domestic use, would be alike embraced in the terms of the law. Can it be for a moment supposed that the legislature designed to subject all these to the operation of the lien laws? Such things, like the coal cars in question, are mere chattels which pass by delivery; a construction which would embrace them within the provisions of the lien laws, would interrupt the daily transactions of trade in such articles, and render the rights of property in them insecure.

*Id.* at 89–90.

Instead, the court relied on the purpose of the lien law to protect mechanics without other practical recourse, observing that machinery that is not "fixed and stationary" may be more easily retained or reclaimed by the mechanic if payment is not made.

In looking at the provisions of the lien laws, and ... **in arriving at the intention of the legislature, we are the more convinced of the propriety of limiting and restraining the meaning of the word machine, used in the law to fixed or stationary machinery** .... We are to inquire, "what was the mischief and defect against which the common law did not provide?" and which the statute was designed to cure; and "it is the duty of the court to make such construction as shall suppress the mischief and advance the remedy." In this case the mischief to be cured was, that **by the common law, the mechanic who erects, constructs or repairs fixed or stationary machinery, like him who builds a house, is without that safe security for compensation which a specific lien on the house or the machine would afford; the design of the act of 1838, and its supplements, was to afford that security. But with reference to movable machines, the common law affords ample and complete security to the mechanic, by leaving in him** .... **the right to retain the possession and his right of property, or his lien, until his claim for con-**

**struction or repair is paid.**[3] There is no sound reason for imputing to the Legislature the intention of extending the operation of the lien laws to cases which were not within the mischief sought to be remedied. . . .

The act of 1845, makes machines subject to a lien, "in like manner as buildings are made subject, under the provisions of this and the original act, to which this is a supplement. The original act of 1838, and the supplement, must therefore be construed together, as one act; and looking to their various provisions, the manner in which the lien is to be asserted, the mode and time prescribed for filing the claim of record, and the form of the action and execution for its recovery, we cannot hesitate in saying, that many of the provisions of the law are inapplicable to movable machines, and conclusively show that the legislature did not intend to embrace them within its operation.

*Id.* at 90–91 (emphasis added and citations omitted).

In reaching this decision, the Court explicitly

consider[ed] the provisions of the act of 1845, ch. 287, which directs that the lien laws under consideration shall receive a liberal construction, as remedial acts. But after mature reflection, we are constrained to adopt the conclusions already stated as entirely consistent with the rules of construction governing the subject.

*Id.* at 91.

As an example of lienable machinery "of a fixed or stationary kind[,]" the *New England Car Spring* Court cited *Wells &*

---

**3.** Under common law in effect at the time *New England Car Spring Co.* was decided, an artisan's lien existed in favor of a person who, "by his labor or skill, improved the value of property placed in his possession," until payment was made for such work and materials. *See Wilson v. Guyton*, 8 Gill 213 (1849); *Wallace v. Lechman & Johnson, Inc.*, 354 Md. 622, 627–28, 732 A.2d 868 (1999). This lien permits the artisan who has possession of such personal property to retain it as security for compensation. *See Wallace*, 354 Md. at 628–29, 732 A.2d 868. Artisan's liens were first codified in 1912. *See id.* at 627–28, 732 A.2d 868. Current Md.Code (1975, 2005 Repl.Vol.), section 16–302 provides that "[a]ny artisan who, with the consent of the owner, has possession of good for repair, mending, improving, . . . or other work . . . has a lien on the goods for the costs of the work done."

*Miller v. Canton Co.,* 3 Md. 234 (1852), involving four presses and heaters installed in a candle factory. The construction and installation work took more than two months to complete. *See id.* at 240. Concluding that "this machinery was no fixture, but movable, and therefore personal property, constituting no part of the factory building," the Court of Appeals recognized that a lien arose as soon as the mechanic began "to put up the machine[.]" *See id.* at 241–42.

The *New England Car Spring* Court also retreated from its analysis in another case, in which a steam engine with boilers and tanks was installed in a cotton factory. In *Denmead v. Bank of Baltimore,* 9 Md. 179 (1856), the Court stated that the statute authorizing mechanic's liens on machines

> contemplates a lien on machinery arising in three different modes: 1st, **where the machine is erected in a house or affixed to it or the soil;** 2nd, where it is constructed and is movable in its operations, **such as a locomotive, a threshing machine, and the like;** and 3rd, where the machine is repaired, whether it be attached to the freehold, or movable in its operation and use.

*Id.* at 184 (emphasis added). The New England Car Spring Court disapproved the notion that mobile machines may be subjected to a lien.

> [A] careful consideration of the question before us, has convinced us that the construction of the word machine, in the act of 1845, as extending to such as are "movable in their operation and use, such as a locomotive, a threshing machine, and the like," is not justified by sound rules of interpretation, or in accordance with the intention of the legislature. . . .

*New England Car Spring Co.,* 11 Md. at 91–92 (citation omitted).

 We regard the distinctions articulated in *New England Car Spring Co.* as identifying two necessary, albeit related, characteristics for a lienable machine. First, the machine must be **immobile,** in the sense that it does not move freely around or off the business premises in performing its intended

use. Second, the machine must nevertheless be **movable,** in the sense that it remains a removable chattel that has not become a permanent fixture of the building or land. By definition, a mobile machine is movable, because machines that remain mobile in operational use may be delivered to and retained by the mechanic, who can exercise its common law right to possession "until [the] claim for construction or repair is paid[.]" *See New England Car Spring Co.,* 11 Md. at 91; *Wallace v. Lechman & Johnson, Inc.,* 354 Md. 622, 627–28, 732 A.2d 868 (1999). Thus, the coal cars at issue in *New England Car Spring* were not lienable under the mechanic's lien statute due to their mobility.

In contrast, an immobile machine may be either movable or unmovable. When such a machine becomes a fixture, as in the case of a heating system incorporated into a building, mechanic's lien rights must be asserted against the building itself. *See Shacks,* 97 A. at 512; *Stebbins,* 39 A. at 322. But when "the mechanic ... erects, constructs or repairs fixed or stationary machinery" that is not incorporated into a building or land as a fixture, it often needs the protection of a machinery lien as "safe security for compensation." *See New England Car Spring Co.,* 11 Md. at 90. These immobile but movable machines are subject to the statutory lien created by RP section 9–102(c).[4]

---

**4.** The statutory scheme governing perfection and enforcement of mechanic's liens does not explicitly address the unique nature of a machinery lien. RP section 9–103, governing the extent of a mechanic's lien established pursuant to section 9–102, provides that "[a] lien established in accordance with this subtitle shall extend to the land covered by the building and to as much other land, immediately adjacent and belonging in like manner to the owner of the building, as may be necessary for the ordinary and useful purposes of the building." There is no comparable statutory language concerning the extent of a lien against machinery. Cases in which such a lien has been recognized, however, indicate that the lien extends to the machinery rather than land. *See, e.g., Weidemeyer v. Brekke,* 248 Md. 175, 176–77, 235 A.2d 718 (1967) (recognizing that "chattel lien" against boat mold, hull, and related machinery under mechanic's lien statute gave the lienholder an interest in such personal property).

### The Dredge

██ Jacksonville Machine's dredge is undisputedly "a very large machine" of approximately "seventy feet by thirty-five feet," which is further enlarged by "pumps and other machines" attached to it. Both sides agree that "[i]t is not something that is designed to be a permanent attachment to property in Kent County." But there has been vigorous debate over whether the dredge is lienable within the standards established by *New England Car Spring Co.*

At the show cause hearing on Jacksonville Machine's lien complaint, Kent Sand and Gravel argued that the dredge is just another mobile machine, such as "a railroad car, or a truck," because, "rather than moving . . . on a highway or a rail line," it "moves in water." Thus, the dredge is "a movable piece of equipment that is intended to be used at various different mining operations in . . . New Jersey, Delaware, and Maryland[.]"

Jacksonville Machine disputed that the dredge is mobile, arguing that it is not designed to "float about on a river or waterway." To the contrary, it "was installed and built in an enclosed gravel pit[,]" for the specific purpose of digging at that site for "ten to fifteen years," so that it materially differs from a river dredge or coal car that moves "here and there." Moreover, the dredge took "approximately ten weeks to construct . . . in its present location," at an approximate cost of $120,000 for materials and labor, so that it would require a "large amount of time, energy and money to disassemble" and remove it from the quarry. Unlike a "locomotive or thresher," which move around the business premises when in use and can be easily transported off premises, this dredge is neither "movable in operational use" nor easily "removable as security" in the manner contemplated in *New England Car Spring Co.* For that reason, Jacksonville Machine asserted, a mechanic's lien is the only feasible way to protect it "from an unscrupulous general contractor."

At the conclusion of the hearing, the court viewed "this [as] an academic exercise[,]" ruling as a matter of law that Jacksonville Machine could not obtain a mechanic's lien because

> **this dredge is ... movable.** Quite simply, a house is movable, even though it's affixed to the land. You can pick it up and move it with great ... difficulty. But it's ... not fixed to the land. **The machinery that they talk about [in the cases] is fixed to the land.** The railroad car, I guess it's a degree of ... how easily something can be moved. **Some things are [more] easily moved than others. This isn't, but it is not fixed.... [W]hile it is movable, it isn't going anywhere.... I think it's just a little short of being where the statute requires it** to be. You ... are very close on to it. I will deny the mechanic's lien at this time. (Emphasis added.)

We question this rationale because the court appears to have mixed the apples of "mobility during operational use" with the oranges of "removability from the premises." The circuit court dismissed the lien complaint on the ground that the dredge is "movable," which the court construed to mean not being "affixed to the land." If the ruling rests on the premise that mere removability from the premises precludes a machinery lien, it is erroneous. As we explained above, the fact that the dredge may be removed from the quarry, by itself, cannot justify denial of a machinery lien. To the contrary, this type of "movability" is a prerequisite for establishing such a lien.

Moreover, our concern is not allayed if we interpret the court's ruling as a determination that the dredge is mobile. As we also have explained, a mobility finding was essential to the court's decision because, if the dredge is mobile, it cannot be subjected to a machinery lien, but if the dredge is immobile, and it is otherwise removable, then it might be a lienable machine. We conclude that the court did not adequately consider how the dredge performs its work or how it is installed in the quarry, which are critical in determining whether it is mobile in its operational use.

As a threshold point, we are not persuaded that this dredge is enough like the coal cars, locomotive, and thresher identified in *New England Car Spring Co.* to be automatically classified as mobile, and therefore non-lienable, machinery. Whereas those types of machines might be reclaimed by swiftly transporting them off the premises without the need for disassembly or detachment, it is undisputed that this dredge cannot be removed from the quarry without considerable disassembly. In that respect, the dredge more closely resembles the lienable candle factory presses and heaters in *Wells.*

Furthermore, whether the dredge is mobile, within the specialized meaning established by *New England Car Spring Co.*, is not a question that can be resolved as a matter of law on this record. At the show cause hearing, the court did not consider evidence or otherwise solicit a stipulation or proffer from counsel regarding how the dredge performs its work. Moreover, the only information regarding how the dredge was installed in the gravel pit came from Jacksonville Machine's proffer that it took "ten weeks to construct" on site. Given the lack of critical information regarding this dredge, the court could not determine as a matter of law that the dredge is mobile or unlienable.[5] Thus, if we assume, despite the

---

5. Other courts have held various types of dredges lienable under diverse statutory lien schemes, based on detailed information regarding installation and operations. *See, e.g., Mid–Ohio Mech. Inc. v. Carden Metal Fabricators, Inc.,* 169 Ohio App.3d 225, 862 N.E.2d 543, 547–48 (2006) (approving unreported decision in which floating dredge that was constructed in a gravel pit but tied to land was subjected to mechanic's lien as a "structure," and giving details about dredge installation and operation), *appeal denied,* 112 Ohio St.3d 1493, 862 N.E.2d 118 (2007); *John Wendt & Sons v. Edward C. Levy Co.,* 685 N.E.2d 183, 188–89 (Ind.Ct.App.1997) (acknowledging personalty lien against floating dredge installed in mining pit); *The Am. Eagle,* 30 F.2d 293, 294–95 (D.Del.1929) (floating canal dredge held subject to statutory maritime lien); *Colo. Gold Dredging Co. v. Stearns–Roger Mfg. Co.,* 60 Colo. 412, 415–16, 153 P. 765, 766 (1916) (floating dredge used in mine held subject to statutory lien covering work and materials on "machinery or other fixtures"). *But see Nordstrom v. Sivertsen–Johnsen Mining & Dredging Co.,* 5 Alaska 210, 215–16 (D.Alaska. Terr.1915) (mining dredge was "in the same class with threshing machinery, or any other

court's silence, that the court did find the dredge to be mobile, then it erred in treating the answer as "an academic exercise."

This case does not present the lien priority issue posited by Kent Sand and Gravel, which complains that "[a] decision to allow a lien against this dredge would suddenly call into question the title to any . . . machinery" that might be "sold at large auction houses a great distance removed from their original site after the first use or job is complete or if the original company fails." Although we recognize the possibility of a priority conflict between the holder of a machinery lien and a subsequent bona fide purchaser for value of that machine, and that the mechanic's lien statute is silent regarding that situation, our decision here addresses only the type of machines that may be lienable under RP section 9–102(c).

We hold that the circuit court erred in dismissing Jacksonville Machine's complaint to establish a mechanic's lien. It is possible that a machinery lien might be obtained against the dredge in question, if it is immobile (*i.e.*, remains in a substantially stationary location on the premises during its operational use) and movable (*i.e.*, capable of being removed from the premises and used in another location). Given the undeveloped evidentiary record at the show cause hearing, we do not opine whether a lien is appropriate here. Our ruling is limited to vacating the judgment dismissing the lien complaint and remanding to the circuit court, for further proceedings allowing Jacksonville Machine to present evidence.

**JUDGMENT VACATED AND CASE REMANDED TO THE CIRCUIT COURT FOR KENT COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

---

kinds of farming machinery, being used upon or in connection with mines or mining ground," and therefore not subject to mechanic's lien).