**TOWN OF WEST UNIVERSITY PLACE v. ANDERSON.**

**No. 9857.**

Court of Civil Appeals of Texas. Galveston. March 23, 1933.

Rehearing Denied April 27, 1933.

Robt. L. Sonfield, of Houston, for appellant.

W. P. Hamblen and Phil D. Woodruff, both of Houston, for appellee.

LANE, Justice.

This suit was brought by Clarence L. Anderson against town of West University Place, a municipal corporation. Plaintiff alleged that in about the months of February and March, 1922, pursuant to a certain contract dated February 3, 1922, entered into between himself on the one side and F. J. DeMerrit and S. E. McHard on the other side, individually and as attorneys in fact for the owners of certain property lying in what is now known as Fairhaven and Colonial additions, he (Clarence Anderson) constructed a water distributing system located in said Fairhaven and Colonial additions; that such water system consisted of a large water main running east and west on the north side of Bellaire boulevard, beginning at a point where the Southern Pacific Railroad crosses Bellaire boulevard, and extends east to Fairhaven boulevard, thence north in and along Fairhaven boulevard to Avenue F in Fairhaven addition, and thence with its laterals east and west in the avenue of and in the two additions above named; that he was the owner of said water system on the 1st day of May, 1929, together with water wells and a reservoir, all of which he operated to furnish water to his customers in Fairhaven and Colonial additions at a cost to him of $5 per month; that he had many customers, each of whom paid him $2.50 per month for water furnished them; that the reasonable value of the use of said system in said additions amounted to the sum of $37.50 per month; that about May 1, 1929, defendant unlawfully cut plaintiff's water main and connected its main thereto in such manner that all of the system north of Bellaire boulevard was taken over and all customers connected thereto were thereafter serviced by defendant; that the reasonable value of said portion of the system converted on May 1, 1929, was $1,950.68, as of that date; that about April 1, 1930, defendant unlawfully cut plaintiff's water line again in such manner that all of the balance of said system located in Fairhaven and Colonial Terrace additions was converted to defendant's use, and the reasonable value of the portion of said system converted April 1, 1930, was $1,-174.53, as of that date. Plaintiff prayed for judgment against defendant for a total sum of $3,125.21, together with interest at 6 per cent. per annum on each amount above stated from the date of each conversion, and also prayed for the reasonable value of the use of said system from the dates of conversion.

Defendant answered by general demurrer, special demurrers, and general denial.

The case was tried before the court without a jury, and judgment was rendered in favor of plaintiff against defendant for the sum of $2,894.05, together with interest thereon from date of judgment, and from such judgment defendant has appealed.

At the request of appellant the court filed his findings of fact and conclusions of law, as follows:

"I find that the plaintiff, Clarence L. Anderson, on the 1st day of May, A. D. 1929, was the owner of that certain water distributing system located in Fairhaven and Colonial Terrace Additions, together with the line extending east along Bellaire Boulevard and thence south a distance of approximately 1100 feet, as shown and delineated on Exhibit 'B' of plaintiff's original petition.

"I find that on the 1st day of May, A. D. 1929, the defendant, Town of West University Place, acting by and through its agents, servants and representatives, severed and cut plaintiff's said water main on Fairhaven Boulevard, about twenty feet south of Bellaire Boulevard, in such a manner that the plaintiff could no longer furnish water to consumers connected to said water system north of Bellaire Boulevard.

"I further find that on the 1st day of April, A. D. 1930, the defendant, Town of West University Place, acting by and through its agents, servants and representatives, severed and cut plaintiff's said water main on Bellaire Boulevard, at a point east of Fairhaven Boulevard, so that plaintiff could no longer furnish water to any of said consumers connected to said water system.

"That the defendant, acting by and through its agents, servants and representatives, connected its own water mains onto plaintiff's said water system on the above mentioned dates and at said times began to furnish water to those consumers formerly furnished with water by plaintiff.

"That the reasonable cash market value of that portion of plaintiff's distributing system which was cut, severed and converted by the defendant on May 1st, 1929, was the sum of One Thousand Five Hundred Seventy-nine and 27/100 Dollars ($1,579.27) on said date, in said additions where the same was located.

"That the reasonable cash market value of that portion of plaintiff's distributing system which was cut, severed and converted by the defendant on April 1st, 1930, was the sum of Nine Hundred Twenty-seven and

63/100 Dollars ($927.63) on said date, in said additions where the same was located.

"That the plaintiff, Clarence L. Anderson, did not consent to said defendant taking said water distributing system and that at the time said system was taken over by said defendant on May 1st, 1929, plaintiff had connected to said distributing system sixteen consumers from whom he was receiving the sum of $2.50 each, per month, for said service, and said consumers were thereafter furnished water by the defendant.

"I further find that the plaintiff had installed said water distributing system under authority of a franchise granted by the Commissioners Court of Harris County, Texas, and that at the time said system was installed, the additions in which it was installed were not a part of the Town of West University Place.

"I further find that the four-inch pipe east of the Southern Pacific tracks and west of Fairhaven Boulevard on Bellaire Boulevard was not actually severed by the defendant, acting by and through its agents, servants and representatives, but that the only purpose that said pipe could be used by plaintiff was to feed water into said distributing system, and when the whole of said system was taken over and was used by the defendant, said four-inch pipe was rendered useless to plaintiff.

### "Conclusions of Law.

"I conclude that the plaintiff, Clarence L. Anderson, is entitled to recover the reasonable cash market value of that portion of plaintiff's distributing system which was cut, severed and converted by the defendant on May 1st, 1929, as of that date in said additions where the same was located.

"I conclude that the plaintiff, Clarence L. Anderson, is also entitled to recover from the defendant the reasonable cash market value of that portion of said distributing system which was cut, severed and converted by the defendant on April 1st, 1930, as of that date in said additions where the same was located.

"That in addition thereto, plaintiff is entitled to recover from the defendant interest at the rate of six per cent per annum from the dates of the conversion, on the respective reasonable cash market values of the portions converted, to date of judgment.

"*That plaintiff is not entitled to recover the sum of $2.50 per month for each consumer connected with said water distributing system since the 1st day of May, A. D. 1929, as special damages.* (Emphasis ours.)

"That even though the four-inch main along Bellaire Boulevard west of Fairhaven Boulevard and east of the Southern Pacific tracks was not cut by defendant, it was rendered worthless and useless to the plaintiff and, as a matter of law, defendant converted it also."

Appellant presents only five propositions.

By its first proposition, it states only the well-established general rule of measure of damages applicable to the conversion of property; hence no discussion thereof is necessary.

Appellee alleged that his water system in Colonial Terrace and Fairhaven additions, and that part of same lying east of the Southern Pacific Railroad, had been converted by appellant. There was neither pleading nor evidence warranting a finding that that portion of said system lying west of the railroad was converted by appellant; indeed, appellee makes no such contention. The cause seems to have been tried on the theory by both parties that the alleged conversion was of the pipe and fittings constituting the system lying east of the railroad. In appellee's effort to show the value of the pipe and fittings constituting his water system lying east of the railroad, taken by appellant, he testified that the part thereof converted by appellant in 1929 had been in the ground and used in the system seven years, and that part thereof converted in 1930 had been in the ground and used for eight years; that he had been in the water business some twenty years, and during such time he had laid or supervised the laying of approximately seven or eight miles of pipe; that such pipe was laid in the construction of water systems; that he had run electric light plants, ice plants, and work of such type, all his life; that he was familiar with the duration of time the kind of pipe used in his water system would adequately serve in a water system; that it would serve anywhere from thirty-five to fifty years; that a fair amount of depreciation per year of such pipe used in a water system is 2½ per cent.

He was permitted to testify, over objection by appellant, that the pipe used in his system would serve forty years; that the fair amount of depreciation of same is 2½ per cent. per year. Testifying further, he said that the value of the pipe converted in 1929, in the ground and at the time it was converted, would be $1,890.67; that, as it had been in the ground for seven years at the time it was converted, it had depreciated in value to the extent of 2½ per cent. per year for seven years, a total depreciation of $321.41, leaving its fair market value when converted at $1,569.26; that the value of the pipe converted in 1930, which had been in the ground for eight years, after deducting the 2½ per cent. per year for the eight years, was $927.63.

Appellant accepting the challenge of appellee to reduce the issues to the one question, to wit, the damages suffered by appellee by reason of the conversion of the pipe in the ground, called several witnesses who contradicted the testimony given by appellee as to the value of the pipe when con-

verted by appellant. The testimony of such witnesses places the value of the pipe at much less than did appellee. By the last few words on page 17 of appellant's brief it is said: "The correct measure of damage is the market value of the pipe and fittings so converted at the time and place of conversion, and where located in the ground."

By appellant's propositions 2 and 3 it is contended that the court erred in permitting appellee, Anderson, to testify to the facts above stated, in that such testimony was not a proper method of arriving at the proper measure of damages; the correct measure of damages being the market value of the pipe and fittings converted, at the time and place of conversion, and in that it was not shown that the witness was qualified as an expert witness on the matters testified to by him.

We overrule the contention. As shown from the testimony of appellee above stated, he was qualified as an expert as to value of pipes laid in the ground and as to its annual depreciation in value, and as the parties had by the evidence introduced by them, respectively, submitted to the court but two issues: (1) Was appellee entitled to damages by reason of losing his water customers; and (2) what was the market value of the pipe converted at the time and place of conversion where it was located in the ground, and as the first of these issues was decided in favor of appellant, we think under the circumstances and the theory of the case as presented to the court the testimony of appellee objected to was properly admitted.

Appellant's fourth and fifth propositions are as follows:

"Fourth: Appellant can only be held liable for the property actually converted, and since the four-inch pipe lying along Bellaire Boulevard was never converted by appellant, it cannot be held liable therefor."

"Fifth: The correct measure of damages in a suit for conversion is not the value simply of the particular property in question, but the market value of the property so converted at the time and at the place converted; and, as in the case at bar, where the property converted consisted of galvanized iron pipe and fittings that were in the ground and had been in the ground for a period of seven years and eight years, respectively, at the date of said conversion, the correct measure of damage is the market value of this pipe and fittings at the time and at the place of conversion and in the ground."

The statement of the general rule of damages for conversion of property made by the fourth and fifth propositions is abstractly correct, and it raises no controversy. The plaintiff's suit, however, is for the market value of the property converted at the time and place of such conversion. The plaintiff sought no recovery for new galvanized iron pipe and fittings, and no such recovery was awarded him by the judgment. The evidence shows that a part of the pipe converted had been in the ground for about seven years, and other parts thereof for about eight years, and that the same would depreciate in value at the rate of 2½ per cent. each year. In awarding damages, the court allowed the depreciation shown by the evidence.

It is contended, however, by appellant that it was not shown that a part of the four-inch pipe lying along Bellaire boulevard was taken by it, and it cannot be held liable therefor.

We overrule such contention. Appellee, Anderson, testified that the four-inch main lying along Bellaire boulevard was used exclusively for furnishing water for his distributing system, and that after appellant had cut his line it was not possible for him to serve any one through such main. The undisputed evidence shows that appellant by cutting appellee's main rendered all that portion thereof east of the railroad useless to appellee as a part of his water system. Appellee's water plant proper was at Bellaire, west of the railroad. Appellee only sought to recover for so much of his main as was located within the corporate limits of University place lying east of the railroad, all of which, by reason of appellant's act, was rendered valueless to appellee as a part of his water system. Where there is an actual conversion of the major portion of a chattel to such an extent as that the remainder is rendered valueless to the owner, as in this case, such conversion of the major portion amounts to a conversion of the whole.

In 38 Cyc. page 2019, § 5, the following rule is stated: "*Conversion of Part as Conversion of Whole.*—Conversion of a part amounts to conversion of the whole of a chattel when the circumstances evince a purpose to control or dispose of the whole of it, or whenever the remaining part is thereby impaired in value or utility."

In support of the rule, the author cites Gentry v. Madden, 3 Ark. 127; Thompson v. Moesta, 27 Mich. 182; Brown v. Ela, 67 N. H. 110, 30 A. 412; Corotinsky v. Cooper, 26 Misc. 138, 55 N. Y. S. 970; Bowen v. Fenner, 40 Barb. (N. Y.) 383.

In 26 R. C. L. page 1116, it is said: "The injury of property also amounts to a conversion when such injury is essential in character. Thus, where the defendant hired an omnibus for use only in a particular place and then drove it with a heavy load to a

different place and damaged it so as to require repairs, he was held liable in trover for the value of the property"—citing Hart v. Skinner, 16 Vt. 138, 42 Am. Dec. 500, and note.

In view of the theory of the case as adopted by the parties and as submitted to the trial court, it should be held that the evidence supports the findings of the court upon which the judgment was rendered.

Having reached such conclusion, it becomes our duty to affirm the judgment, and it is accordingly so 'ordered.

Affirmed.