# PATAPSCO TRAILER SERVICE & SALES, INC.
## *v.* EASTERN FREIGHTWAYS, INC.

[No. 231, September Term, 1973.]

*Decided May 2, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Melvyn J. Weinstock*, with whom were *Elliott J. Pheterson* and *Weinberger & Weinstock, P.A.* on the brief, for appellant.

*Samuel S. Smalkin*, with whom were *Rollins, Smalkin, Weston & Andrew* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This dispute commenced with a replevin action brought by appellee, Eastern Freightways, Inc. (Eastern), against appellant, Patapsco Trailer Service & Sales, Inc. (Patapsco), for the return of a 1965 Trailmobile refrigerated trailer which initially had been delivered to Patapsco for repairs early in 1970, by its prior owner, E. J. Scannell, Inc. After the repairs were completed, Eastern, which had become the owner of the trailer during the interval, persuaded Patapsco to relinquish possession on June 30, 1970, apparently with the tacit understanding that the repair bill would be paid.

On January 5, 1971, having failed to receive payment, Patapsco sent an employee to the Eastern yard with a tractor. Apparently without Eastern's permission, the employee hooked up the trailer and returned it to the Patapsco premises. Although the record fails to reflect any form of communication between the parties concerning the removal of the trailer from Eastern's yard, it is not contended that any force was employed or that any damages resulted to the premises.

On March 3, 1971, when it claims to have learned of the trailer's location, Eastern filed this replevin action to regain possession, also claiming damages by a later amendment for costs incurred as a consequence of being denied the use of

the trailer and seeking its return. These damages totaled $2,385, consisting mainly of the rental cost for a replacement trailer and $400 for a replevin bond. Patapsco defended its action in removing the trailer by relying on a statutory lien, and counterclaimed for the repair bill in the sum of $4,585.71, which had never been paid.

The case was tried in the Superior Court of Baltimore City (Cole J.) where the validity of the counterclaim was conceded, and the only issue to emerge was whether Eastern was entitled to its damages. Judge Cole upheld that claim, concluding that:

> ". . . [A]s a result of the *unqualified* surrender of the truck to Eastern, the lien was lost and Patapsco was not entitled to repossess the vehicle from Eastern in order to re-establish a lien which by its own act it had extinguished." (emphasis added).

In addition, the court rejected Patapsco's alternative contention that Eastern failed in its duty "to make reasonable efforts to minimize damages to which Patapsco might be exposed" by unreasonably delaying the commencement of replevin proceedings, and thereby incurring unnecessary rental charges. In this connection, the trial judge, although noting that Eastern was under a duty to mitigate its damages, accepted Eastern's explanation that the delay was caused by difficulty in obtaining a replevin bond. The court said:

> ". . . This assertion by Eastern is uncontradicted in the record and the Court finds as a fact that Eastern did not unreasonably delay the institution of replevin proceedings. . . ."

The court then entered judgment in favor of Patapsco in the amount of $2200.71, representing the difference between the amount of the repair bill and the damages sustained by Eastern. From that judgment, this appeal is taken.

In this Court, Patapsco apparently does not press the second point decided by the trial court, presumably because it presented an issue of fact. Therefore, we do not reach it.

The single question posited for our consideration, then, is whether Patapsco rightfully regained possession of the trailer from the Eastern yard on January 5, 1971. As the court below held, the answer to that question turns on whether Patapsco retained a lien as of that date.

In urging reversal, Patapsco primarily contends that at the time it regained possession of the trailer on January 5, 1971, it still retained the garage keeper's lien which it had previously acquired, when it completed the repairs, pursuant to Maryland Code (1957, 1972 Repl. Vol.) Art. 63, § 41:

> "Whenever a motor vehicle or any part thereof is left by the owner or by any other person with his authority, express or implied, in the custody of any corporation, firm or individual, association, or person for repair, rebuilding, storage, or for the purpose of having furnished for or on account of the same any parts, accessories, or tires, the corporation, firm, individual, association or person in whose custody said *motor vehicle or part thereof* is left for all or any of the purposes aforesaid, shall have a lien on said *motor vehicle or part thereof* for all charges so incurred, and may lawfully retain the same until said charges have been paid, or until said lien is extinguished or discharged as hereinafter provided. . . . *Surrender or delivery* of any *motor vehicle* subject to the lien aforesaid shall operate as a waiver or extinguishment of the same as against third persons without notice thereof, but shall not operate as such *waiver or extinguishment as against the owner* or as against third persons with notice." (emphasis added).

In short, the Patapsco argument is that since its lien for repairs had not been waived or extinguished by the unqualified surrender to Eastern, it rightfully recovered the trailer. Hence, it maintains, Eastern was not entitled to possession as long as it refused to pay the repair bill, and therefore was precluded from seeking damages for denial of the trailer's use.

Preliminarily, Patapsco relies upon two cases, *The Winton Co. v. Meister*, 133 Md. 318, 105 A. 301 (1918) and *Gordon v. Sullivan*, 188 F. 2d 980 (D.C. Cir. 1951). Neither of those cases is apposite, since their factual situations are distinguishable from the case at bar. In *Winton*, it was contended that a lien had been lost by the removal of the automobile from a repair shop for the specified purpose of having certain upholstery measurements made. In rejecting that claim, our predecessors noted that the car apparently had been removed for only one hour, and was actually in the possession of the garage keeper when replevied by the conditional vendor; furthermore, it had been removed for that brief period only with the understanding that it was not to be surrendered until the repair bill was paid.

In *Gordon v. Sullivan, supra,* where the repairman had surrendered possession of a car to the conditional vendee who had initially brought it in for repairs, the court held that the lien was revived when the garage keeper subsequently regained possession. Therefore, he could enforce the original lien by detaining the car until the repair bill was paid. In holding that the lien had not been extinguished when the automobile was released, the court said:

"... [I]t was merely in a state of suspended animation while he was out of possession, since he could not enforce it during that period. If his regained possession was lawful, the remedy was once more available. (citation omitted)." 188 F. 2d at 982.

Nevertheless, that case affords no support for Patapsco's position. First, it involved an automobile rather than a trailer which, for reasons to be stressed later, represents a significant distinction.[1] Secondly, the garage keeper had surrendered the car upon the customer's express agreement to return it for the completion of work which had been delayed pending receipt of additional parts. Here, of course,

---

[1]. The District of Columbia statutory garage keeper's lien, like § 41, applied to "motor vehicles."

there was no agreement to return the trailer when it was released to Eastern.

The principal argument advanced by Patapsco, however, is that § 41 not only conferred a statutory lien for repairs, by its express language, but also preserved that lien as against Eastern even after the trailer had been surrendered. We disagree.

By its explicit terms, § 41 fastens a lien only upon "a motor vehicle or any part thereof." Although Article 63 contains no definition of a "motor vehicle," Art. 66 1/2, § 1-149 defines it as "a vehicle which is self-propelled." This is the generally accepted view. The identical definition appears in 60 C.J.S. *Motor Vehicles* § 1 b (1969) and 27A *Words and Phrases,* "Motor Vehicle" (1961). The same definition may also be found in *Black's Law Dictionary* 1164 (4th ed. rev. 1968). A "trailer," however, is defined as a "separate vehicle, which is not driven or propelled *by its own power,* but which is drawn by some independent power." 60 C.J.S. *Motor Vehicles* § 7 (2) b (1969) (emphasis added). Thus, the trailer was not a "motor vehicle," as that term is used in § 41, and to that extent, the portion of the statute which allows retention of the lien does not apply here.

Furthermore, even if we assume, without deciding, that the trailer qualifies as a "part" of a motor vehicle within the meaning of § 41, Patapsco is not helped. Although the statute does provide for a lien upon a "motor vehicle or part thereof," the last sentence of the section limits the retention of the lien — where there has been a "surrender or delivery" of possession — to a "motor vehicle," and omits any reference to a "part." Thus, when there has been a "surrender or delivery" of a "part," there can be no "suspended animation," since only the lien upon a motor vehicle is retained under the statute.

Given its presence in three other places in the section, we are not free to assume that omission of the word "part" from the last sentence was a mere inadvertence requiring its insertion by this Court to carry out the legislative intent. As a general rule, a court may not surmise a legislative intention contrary to the plain language of a statute, nor

insert or omit words to make the statute express an intention not evidenced in its original form. Therefore, absent an ambiguity, which we do not find here, we confine ourselves to the construction of the statute as written, and do not attempt, under the guise of construction, to supply omissions or remedy possible defects, or to insert exceptions not made by the legislature, *Radio Com., Inc. v. Public Serv. Comm'n,* 271 Md. 82, 314 A. 2d 118 (1974); *Scoville Serv., Inc. v. Comptroller,* 269 Md. 390, 306 A. 2d 534 (1973); *Amalgamated Ins. v. Helms,* 239 Md. 529, 212 A. 2d 311 (1965). It is also important to note that insofar as § 41 preserves a garage keeper's lien after there has been a "surrender or delivery," it is in derogation of the common law. Therefore, it must be strictly construed. *MacBride v. Gulbro, Adm'x,* 247 Md. 727, 234 A. 2d 586 (1967); *Roberts v. Warden,* 242 Md. 459, 219 A. 2d 254 (1966), *cert. denied,* 385 U. S. 876, 87 S. Ct. 156, 17 L.Ed.2d 104 (1966); *Gleaton v. State,* 235 Md. 271, 201 A. 2d 353 (1964); *State v. Gibson,* 4 Md. App. 236, 242 A. 2d 575 (1968), *aff'd,* 254 Md. 399, 254 A. 2d 691 (1968); *see Stuart v. Board of Elections,* 266 Md. 440, 295 A. 2d 223 (1972).

Even if appellant were able to extricate itself from the narrow confines of the statute, the common law would afford no relief. As we have already intimated, prior to the adoption of § 41, Maryland did recognize a common law lien in favor of an automobile repairman who furnished labor and materials, *Myers v. Auto Company,* 143 Md. 107, 121 A. 916, 30 A.L.R. 1224 (1923); *The Winton Co. v. Meister, supra.* As our predecessors said in *Winton,* "[w]hile there is no statute in this State creating a repairman's lien for repairs to an automobile, it is clear that a common law lien would exist on such property until the charges for labor and expenses are paid. . . ." 133 Md. at 320.

It is equally clear, however, that at common law, such a lien — being dependent upon possession — was waived or lost when the lienholder voluntarily and unconditionally parted with possession or control of the property to which the lien had attached; thus, the lien could not be restored thereafter by resumption of possession, *National Bank v.*

*Finn,* 253 P. 757, 81 Cal. App. 317 (1927); *Goldwater v. Mendelson,* 8 N.Y.S.2d 627, 170 Misc. 422 (1938); 53 C.J.S. *Liens* § 17 d (3) (1948). Therefore, even if we assume arguendo that a common law lien did attach when the repairs were made to the trailer, it was extinguished when, as the court below found, the "unqualified surrender" occurred.

In sum, since Patapsco no longer retained its lien upon the trailer after the surrender, it could not assert a right to possession as against the owner. Therefore, Eastern was properly awarded the damages which it sustained in consequence of being denied the use of the trailer while deprived of its possession.

*Judgment affirmed; appellant to pay costs.*