732 A.2d 868

Andy WALLACE, t/a EZ Computers

v.

LECHMAN & JOHNSON, INC.

No. 122, Sept. Term, 1998.

Court of Appeals of Maryland.

July 9, 1999.

Steven C. Rohan, Silver Spring, for Appellant.

Christopher D. Imlay (Booth, Freret, Imlay & Tepper, P.C., all on brief), Washington, DC, for Appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

RODOWSKY, Judge.

Illustrated here is a lay person's misunderstanding of his legal rights. The appellant sold goods on credit without creating a security interest. When certain of the goods came back into the possession of the seller for the purpose of conforming them to the contract, the seller retained the goods while demanding payment of the outstanding balance of the sale price. As we explain below, the appellant thereby converted the goods to his own use and became liable in damages.

The appellee (plaintiff at trial) is Lechman & Johnson, Inc. (the Firm). It is a telecommunications technical consulting firm that performs engineering tasks for clients in the broadcast industry, particularly with regard to matters before the Federal Communications Commission.

Prior to the events hereinafter described, the Firm used several computers in its business operations, none of which were tied into any central network. In June 1992, the Firm decided to place its individual computers on a network, thereby allowing its employees to store, access, and share information among all of the computers in the office.

Peter Lechman (Lechman) contacted the appellant (defendant at trial), Andy Wallace (Wallace), trading as EZ Computers, about designing and assembling the network. They entered into evolving oral agreements under the final version of which Wallace would provide and install the equipment necessary to network the Firm's computers in return for which the Firm would pay $10,271.34.

On an agreed exhibit, a bill from Wallace to the Firm dated June 9, 1993, the equipment and services are itemized. The hardware totaled $8,632.23; the labor, $1,155; and sales tax,

$434.11. Among the hardware items that Wallace supplied the Firm was a 486 processor tower computer (the 486 Computer) at a price of $2,100. This unit gave the system a capacity of 1028K of memory, in contrast to the 512K capacity of the individual units that the Firm had been operating separately.

Installation of the equipment commenced in November 1992. Under the evidence most favorable to the plaintiff, the prevailing party at trial, the Firm encountered a series of problems with the operation of the network. Lechman testified:

> "Each and every time [Wallace] came back to the office to work on a system, he would solve that problem to an extent but then another problem would pop up. And he spent so much time in our office calling 800 numbers and support groups finding out what was wrong with the software or the cards he had purchased to make the system work, and the only answers I got was, oh, we have to get another card. This card is not the right card for the system. And I took his word for it and we had to wait for the card to come in to make the system work."

One of the problems pertained to the 486 Computer's modem and, therefore, the system's fax capabilities.

Wallace visited the Firm's offices on June 3, 1993, and informed Lechman that "he was changing some jumpers, and he installed a new card...." Wallace removed the 486 Computer from the Firm's office, stating that he wanted to take it back to his office "to finalize the repairs on it." This corrective work was to be performed on the modem.

A few days after he took the computer, Wallace informed Lechman that the computer had been repaired. Wallace demanded payment of the outstanding balance on the June 9 invoice, an amount which Wallace stated was some $3,000. At that time Wallace demanded an additional $300 to reinstall the 486 Computer. Lechman would not agree.

On August 10, 1993, Wallace wrote a letter to the Firm demanding payment. The letter reads:

"The balance due is $3026.28 [sic] less proof of the $1000.00 payment will be adjusted either when you FAX me a copy of the canceled check or bring it with you when you finalize the bill. The method of payment for the balance due is cash only to made at this office and does not include charges to reinstall the system. If you wish the system reinstalled please add $150.00 to this amount, otherwise, you may take the system with you. *If you fail to make . . . the payment on or before the final due date, then the system will be sold on September 1st, 1993 for the highest offer.*" (Emphasis added).

Lechman responded with a letter dated August 27, 1993. He admitted that he was "very much aware of our financial responsibility to EZ Computers" but demanded return of the computer and suggested that Wallace had broken the law by holding the computer "as collateral for the remaining monies due."

Subsequently Wallace agreed that the Firm had paid $1,000 on the bill that Wallace had not credited. Thus, the Firm had paid $8,245, leaving a balance of $2,026.34 remaining on the invoiced price.

Wallace continued to hold the 486 Computer, and, on July 20, 1994, the Firm instituted this suit in the Circuit Court for Prince George's County, alleging that Wallace converted the computer to his own use. The Firm demanded the "immediate return" of the computer and all associated software, $15,000 in compensatory damages, and punitive damages.[1] In

---

1. The Firm obviously was not seeking the "immediate return" of the property. Were that truly the remedy sought, the action would have been in replevin, over which the District Court of Maryland has exclusive original jurisdiction "regardless of the value of the thing in controversy." Md.Code (1974, 1998 Repl.Vol.), § 4–401(2) of the Courts and Judicial Proceedings Article. Based on the relief sought we construe the complaint to sound in detinue, in which action the complaint alleges "that the defendant unjustly detains property described therein to the possession of which the plaintiff is entitled and shall claim the return of the property, or its value, plus damages for its detention." 2 Annotated Code of Maryland, Maryland Rules (1994), ch. 1100, Special Proceedings, Rule BQ53(c).

his answer, Wallace claimed that he had retained the computer lawfully under an artisan's lien securing the balance of the monies owed under his contract with the Firm. Wallace also filed a counterclaim for breach of that contract, alleging that he had fully performed under the contract, but that the Firm had failed to pay the balance.

The dispute proceeded to a bench trial, resulting in a judgment for the Firm on the claim and counterclaim. The court found that Wallace "did not fulfill his obligation to provide a satisfactory computer system in accordance with [the] verbal contract [with the Firm] and therefore [Wallace's] refusal to return the computer amounted to conversion." The court awarded $8,245 in damages to the Firm, representing the "amount paid by [the Firm] for the computer which was not returned to it." On this amount the court, in its discretion, awarded prejudgment interest.

Wallace noted an appeal to the Court of Special Appeals. This Court issued a writ of certiorari on its own motion before consideration of the matter by the intermediate appellate court. Additional facts will be stated in our analysis.

## I

Wallace argues that he "had a statutory lien upon the repaired item and was not required to return same until such time as the lien was discharged." The Firm correctly points out that the lien amount claimed by Wallace is not for work done on the goods after the goods were temporarily put in Wallace's possession, and that, at a maximum, Wallace could claim a lien only for advance payment of the reinstallation services.

Artisan's liens in Maryland were initially founded on the common law. *See Wilson v. Guyton,* 8 Gill 213 (1849). In

Consequently, when the Firm in effect elected to seek the value of the goods, the case was not substantially altered. In any event, Wallace docs not claim any prejudice resulted to it from the Firm's election to seek money damages exclusively.

*Wilson*, the Court held that the finder of lost property has a lien on the property if the owner has offered a fixed reward. In recognizing the existence of such a lien, the Court stated generally: "The doctrine of lien is more favored now than formerly; and it is now recognized as a general principle, that wherever the party has, by his labor or skill, improved the value of property placed in his possession, he has a lien upon it until paid." *Id.* at 214–15.

Artisan's liens were partially codified by Chapter 653 of the Acts of 1912, which provided that "upon all articles left or given to jewelers or silversmiths for repairs or work on, the jewelers or silversmith shall have a lien on said article or articles for cost of repairs, work on and material put on or in such article." This statute was expanded over the years to include liens by other types of artisans. Prior to its revision in 1975, the statute read:

> "Upon all articles of merchandise of every kind left or given to artisans, tradesmen, mechanics, laborers or other persons by the owner or by any other person with his authority, express or implied, for repairing, mending, improving, or other work thereon, the said artisans, tradesmen, mechanics, laborers or other persons shall have a lien on said article or articles *for cost of repairs, work on and material put on or in such article.*"

Md.Code (1972 Repl.Vol.), Art. 63, § 40 (emphasis added).

In 1975 the General Assembly revised the provisions relating to artisan's liens, enacting the current statute, Md.Code (1975, 1990 Repl.Vol.), §§ 16–301 and 16–302 of the Commercial Law Article (CL). The relevant language now reads: "Any artisan who, with the consent of the owner, has possession of goods for repair, mending, improving, dry cleaning, laundering, or other work, has a lien on the goods for the costs of the work done." CL § 16–302. The revisor's note states that § 16–302 merely contains new language "derived without substantial change from Art. 63, § 40."

▮ That an artisan may assert this statutory lien on an item repaired only to the extent of the costs of repairing that

particular item is also consistent with the common law. *Winton Co. v. Meister*, 133 Md. 318, 105 A. 301 (1918), involved the lien claim of an automobile repair mechanic at a time when no statute expressly recognized the lien. This Court said: "While there is no statute in this State creating a repairman's lien for repairs to an automobile, it is clear that a common law lien would exist on such property until the charges for the labor and expenses are paid." *Id.* at 320, 105 A. at 302. As support for this proposition, the Court cited 17 W.M. McKinney & B.A. Rich, *Ruling Case Law*, at 600 (1917), where the editors stated:

> "A specific lien is a charge upon a particular piece of property, by which it is held for the payment or discharge of a particular debt or duty, in priority to the general debts or duties of the owner. Thus, where a chattel is delivered to a person for the purpose of altering or improving or otherwise working on it, that person has a specific lien on that article for his remuneration for the labor and expense done and incurred in respect of that article, whether such remuneration is fixed by contract or not."

■ In the instant matter Wallace does not contend that an artisan's lien in his favor arose after his initial installation of hardware at the Firm and before he obtained possession of the 486 Computer to correct the modem. Indeed, he could not effectively make such a contention. The artisan's lien is a possessory lien which is lost when the goods that are the subject of the lien are returned to the owner. *Patapsco Trailer Serv. & Sales, Inc. v. Eastern Freightways, Inc.*, 271 Md. 558, 318 A.2d 817 (1974), states the rule. There we held that a refrigerated freight trailer was not a motor vehicle within the meaning of present CL § 16–204, dealing with liens on aircraft, boats, and motor vehicles and providing that "[s]urrender or delivery of the property subject to the lien . . . does not discharge the lien against the owner. . . ." Absent coverage under that special statutory provision, the common law applied to the trailer. We said:

> "[A]t common law, such a lien—being dependent upon possession—was waived or lost when the lienholder voluntarily

and unconditionally parted with possession or control of the property to which the lien had attached; thus, the lien could not be restored thereafter by resumption of possession. . . . Therefore, even if we assume arguendo that a common law lien did attach when the repairs were made to the trailer, it was extinguished when, as the court below found, the 'unqualified surrender' occurred."

271 Md. at 564–65, 318 A.2d at 821 (citations omitted). *See also* Restatement (First) of Security § 80 (1941) (Restatement) (subject to certain exceptions not here pertinent, "[w]here a possessory lienor surrenders possession of a chattel to a bailor, the lien is terminated"). *Cf. Winton Co.*, 133 Md. 318, 105 A. 301 (lien of auto mechanic for repairs not lost by temporary removal of automobile by bailor to another facility for the purpose of measuring for upholstering, followed by return to mechanic).

■ In *Owcharoffsky v. Lambert*, 135 N.Y.S. 599 (App. Term 1912), a tailor refused to return three of the plaintiff's suits that the plaintiff had left with the tailor for pressing until the plaintiff paid the amount that he owed for the tailor's having made one of the suits. The court rejected the tailor's artisan's lien defense to the plaintiff's conversion action, stating:

"As to the suit which the defendant made, the uncontradicted evidence shows that, after the defendant had completed his work upon it, he delivered it to the plaintiff, who used it for several weeks before he sent it to the defendant to be pressed. When the defendant parted with the suit, he surrendered any lien which he had the right to assert. The uncontradicted evidence shows that the plaintiff established a cause of action upon which he was entitled to recover." *Id.* at 600.[2]

■ Accordingly, any lien that Wallace could claim could not exceed $150. In this connection we shall assume that

---

**2.** The rule that we apply here is to be distinguished from cases in which a number of goods, usually similar, are delivered to the artisan for work

when an artisan removes and repairs an item of personalty that requires reinstallation, the artisan may include a charge for reinstallation in the price for repair work and claim a lien for the total amount, even though the reinstallation work will not have been done at the time the lien is asserted. Nevertheless, there are two reasons why Wallace did not have a lien for $150 in the instant matter.

■ First, the circumstances surrounding the transfer of possession of the 486 Computer from the Firm to Wallace are that there would not be any charge for the work done on the modem at Wallace's shop. Wallace does not claim that any part of the claim of $2,026.34 was for repair work on the modem in his shop. Under the facts as found by the trial court, Wallace's work on the modem continued his attempt to make the goods conform with the contract. Wallace obtained possession of the 486 Computer in order to fulfill his contractual obligations, and not to render some additional service or to repair some damage caused by the Firm. Absent circumstances indicating an obligation to pay on the part of the bailor, no lien arises.

Second, Wallace did not claim a lien for $150; he claimed a lien for a maximum of $2,176.34 ($2,026.34 + $150). As we have seen above, he had no right to assert an artisan's lien for the unpaid balance of the purchase price. Here, Wallace demanded $150 only if the Firm chose to have him reinstall the 486 Computer, but Wallace unconditionally refused to release the 486 Computer unless a minimum of $2,026.34 were paid. Under these circumstances the Firm had no obligation

---

under a single contract. In such cases the artisan may redeliver part of the goods to the bailor and retain the possessory lien against the remaining goods to secure payment of the entire balance payable under the single contract. *See In re Ash Handkerchief Corp.*, 191 B.R. 588, 591–92 (S.D.N.Y.1996); *Hiltz v. Gould,* 99 N.H. 85, 87, 105 A.2d 48, 50 (1954); *Braufman v. Hart Publication, Inc.,* 234 Minn. 343, 346–47, 48 N.W.2d 546, 549 (1951); J.E. Macy, Annotation, *Bailee's lien for work on goods as extending to other goods of the bailor in his possession,* 25 A.L.R.2d 1037 (1952).

to tender $150, and Wallace's possible claim for an artisan's lien for $150 was terminated.

Restatement § 78 states that "[w]here ... tender is waived by words or conduct of the lienor, the lien is terminated." Comment *a* describes waiver of tender as follows:

"A tender is excused if the lienor by words or conduct indicates that a tender will be refused. The mere claim of a larger amount than the one due is not of itself enough to constitute a waiver of tender. The words or conduct of the lienor must indicate that a proper tender will be refused. The lienor is entitled to the sobering effect of a tender unless it is evident that a tender will be a useless formality."

The authors of the Restatement offered the following illustrations:

"2. A jeweler repairs a watch. The bailor asks the charge and is told that there is a charge of $5.00 for this watch and $3.00 for a watch delivered on a different bailment and already returned to the bailor. The jeweler adds that back bills should be paid before the watch is returned. The bailor expresses disagreement, but makes no tender. The jeweler's lien for $5.00 continues.

"3. Same facts as Illustration 2, but the jeweler notifies the bailor that the watch will be held until both bills are paid, and tells his assistant in the presence of the bailor that no offer of anything less than both bills is to be considered. If the bailor is reasonable in assuming that a tender of $5.00 will be refused, the lien is terminated."

Reinforcing Wallace's waiver of tender by the Firm of $150 is the fact that he continued to withhold the 486 Computer after the Firm's letter of August 27, 1993, demanding return of the computer. In that letter the Firm asked if Wallace was "aware of the laws you have broken?" and the Firm also warned Wallace that the letter was "written at the advice of counsel." Wallace stands in the position of the bailor in Illustration 3 of the Restatement.

■ Because Wallace had no lien for the balance of the sale price and waived any lien he may have had for reinstallation, he is liable in conversion. In *Saunders v. Mullinix*, 195 Md. 235, 72 A.2d 720 (1950), we noted that

> "the gist of a conversion is not the acquisition of the property by the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled. Nor need there exist a forcible dispossession of property to constitute an act of the defendant a conversion. A conversion may consist of a wrongful, tortious or unlawful taking of property from the possession of another by theft, trespass, duress, or fraud and without his consent or approbation, either express or implied."

*Id.* at 240, 72 A.2d at 722. *See also Kirby v. Porter*, 144 Md. 261, 266, 125 A. 41, 43 (1923) (wrongful deprivation, without conversion to own use, sufficient to establish conversion).

## II

■ Wallace argues that the damages of $8,245 awarded by the trial court are excessive in light of the uncontradicted evidence that the invoice price of the 486 Computer was only $2,100. The Firm argues that the damages were proper because the computer system never worked and because "[t]o award [the Firm] any less would unduly enrich [Wallace], who ended up with both the computer and the money [the Firm] paid for it. . . ."

The record supports the trial court's award to the Firm of the amount it paid for the computer system. Lechman testified that "the 486 Computer [was] the brain of the operation" and that, once that component was removed by Wallace, the Firm "had to rearrange our system to make it work, to bring it back to what it used to be because of the separate units." Lechman further testified that software that had been installed on the 486 Computer had to be reinstalled on the individual systems in order to make use of that software. Thus, by rejecting Wallace's counterclaim and awarding the Firm

$8,245, the trial court in effect determined that the entire computer system was worthless without the 486 Computer.

The rule that is operative here is stated in F.V. Harper, F. James, & O.S. Gray, *The Law of Torts* § 2.37 (3d ed.1996). There the authors, after stating the ordinary rule that "a converter is liable for the value only of what is converted," state the following exception:

> "When, however, one has converted a part or parts of a chattel, one is treated as a converter of the entire chattel if the parts converted were such substantial and essential parts of the whole that their loss destroys or seriously impairs the chattel's utility or value. The fact that the parts can be replaced, even at slight cost, may be not determinative. Accordingly, where wheels of a wagon were converted, the entire vehicle was considered converted since it was useless without the wheels. So too, the conversion of the battery and crank of an automobile has been held to constitute a conversion of the vehicle, which was thus rendered useless."

*Id.* at 2:123–2:124 (footnotes omitted).

For cases applying the above-quoted rule by awarding damages based on the value of the whole, see *Russell–Vaughn Ford, Inc. v. Rouse,* 281 Ala. 567, 206 So.2d 371 (1968) (new car salesman intentionally withheld from customer keys to customer's current automobile); *Nalley v. Thomason,* 28 Ga. App. 787, 113 S.E. 65 (1922) (only syllabus by court reported); *Corotinsky v. Cooper,* 26 Misc. 138, 55 N.Y.S. 970 (N.Y.App. Div.1899) (parts cannibalized from buttonhole machine); *Bowen v. Fenner,* 40 Barb. (N.Y.) 383 (1863) (wagon wheels taken); *Town of West University Place v. Anderson,* 60 S.W.2d 528 (Tex.Civ.App. 1933) (conversion of water pipes in part of water distribution system rendered entire system valueless); and *Richardson v. Atkinson,* 1 Strange 576 (K.B.1724) ("[D]rawing out part of a vessel and filling it up with water, was a conversion of all the liquor, and the jury gave damages as to the whole."). *Cf. New York Cent. R. Co. v. Buckley Rubber Co.,* 99 Ind.App. 191, 187 N.E. 353 (1933) (taking of five pieces

from twenty-eight ton rubber processing machine not a conversion of whole when parts were replaceable by purchase of similar parts).

Corollary to the foregoing rule is the proposition that intentional physical injury to part of a chattel, depending on the degree of harm, may result in a conversion for which legal compensation is based on the value of the entire chattel at the time of the conversion. *See Seaphus v. Lilly,* 691 F.Supp. 127, 135 (N.D.Ill.1988); *Klam v. Koppel,* 63 Idaho 171, 118 P.2d 729, 732 (1941); Restatement (Second) of Torts § 226, at 441 (1965).

In the matter before us Wallace withheld the Firm's 486 Computer from shortly after June 3, 1993, and after demand for its return made on August 27, 1993, to and after this action was filed on July 20, 1994. The Firm had purchased all of the items listed on the June 9, 1993 invoice as components that, integrated with the Firm's existing independent computers, would create a network system. The circuit court could conclude from the evidence most favorable to the Firm that the system never functioned as promised and that it never would function without the 486 Computer that provided the system with its increased capacity. Accordingly, computing the damages by the value of *all* of the components was not error. *Cf. Keys v. Chrysler Credit Corp.,* 303 Md. 397, 415, 494 A.2d 200, 209 (1985) (measure of damages in conversion of personalty is fair market value at time of conversion, with interest to date of verdict). The circuit court determined that value by the total invoice price, less the portion of that price that the Firm had not paid.

■ Further, a successful action for conversion results in a forced judicial sale of the property converted. *Id.* (citing Restatement (Second) of Torts § 222A (1965)). *Hepburn v. Sewell,* 5 H. & J. 211 (1821), explores the underlying theory.

"It must be borne in mind that the plaintiff in an action of trover compels the defendant to become a purchaser against his will; and from what period does he elect to consider the defendant as a purchaser or as answerable to him for the

value of the thing converted? He selects the date of conversion as the epoch of the defendant's responsibility, and claims from him the value of the property at that period, with interest to the time of taking the verdict. The inchoate right of the defendant as a purchaser, must therefore be considered as coequal with the period of conversion, and his right being consummated by the judgment and its discharge, must, on legal and equitable principles, relate back to its commencement."

*Id.* at 212. Accordingly, upon satisfaction of the conversion judgment, title to the computer equipment sold by Wallace, including what remains in the possession of the Firm, reverts back to Wallace.

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.*