Dear Ms. Wicklund:
You have asked for our opinion concerning the use of organizational dues — and, more specifically, payroll deductions for organizational dues — to fund political contributions. Recently, several political action committees ("PACs") have inquired whether a payroll deduction for a dues payment to a professional association or a labor organization may be used, in part, to fund a PAC established by the association or organization.
Several elements of the State election code — the direct contribution requirement, the recordkeeping rules, and the contribution limits — govern the use of dues and payroll deductions for contributions to a PAC. The State election code permits an organization to make a contribution to a PAC, in theorganization's name, up to the statutory limit of $4,000 during a four-year election cycle. Such a contribution may be made from funds derived from membership dues, assuming that the organization's charter and by-laws, as well as other laws governing the organization, permit it to use its funds for political contributions.
Each member of the organization may also contribute up to $4,000 to the PAC during an election cycle. However, the organization may not pool individual member contributions because the election code requires direct contributions to candidates and PACs; the code does not permit a donor to pass a political contribution through an intermediary. An exception to this general rule permits employees to make contributions by payroll deduction and allows the employer to send these contributions to the PAC in a lump sum with detailed information as to the source, date, and amount of each individual contribution. Such a payroll deduction must be separate from a deduction for organization dues and must be voluntarily elected by the employee.
 I Political Action Committees
PACs are commonly employed by groups of people who desire to pool their resources to participate more effectively in the political process.[1] PACs are formed by a variety of entities — e.g., corporations, labor unions, and professional associations. The name of a PAC must reflect any sponsoring entity. Annotated Code of Maryland, Article 33, § 13-202(c)(2)(iii). The State Board of Elections also requires that the term "PAC" appear in the committee's name. See SummaryGuide to Maryland Candidacy and Campaign Finance Laws at 10 (State Board of Elections, May 1999) ("Summary Guide").
For example, a corporation may create a PAC, which supports or opposes candidates and parties depending on whether they are favorable or unfavorable to the company. Often such PACs receive contributions from corporate officers and employees through payroll deduction; the employer deducts the amount of the contribution from the officer's or employee's paycheck and sends the money to the corporate PAC.
PACs are also sponsored by labor organizations. Such PACs are often funded by the members of the organization through payroll deductions made by the employer and forwarded to the PAC. Similarly, organizations comprised of members of a particular profession, such as accountants, also create PACs to further the interests of the profession in the political arena. Members of the professional organization often make contributions to these PACs in conjunction with the payment of organizational dues.
 II Maryland Campaign Finance Law
The Maryland Constitution authorizes the General Assembly to enact laws "necessary for the preservation of the purity of Elections." Maryland Constitution, Article I, § 7. For that purpose, the State election code has regulated campaign finance for nearly a century. See Healy v. State, 115 Md. 377, 385,80 A. 1074 (1911) ("The act was passed to . . . minimize the corrupt use of money in politics. . . . [I]f rigidly enforced, [it] would vastly improve political conditions . . .").[2] The campaign finance provisions of the State election law are designed for "the regulation and control of campaign financing and to insure a system of centralized responsibility for campaign funds and expenditures." Parker v. Junior Press Printing Service, Inc.,266 Md. 721, 726, 296 A.2d 377 (1972). Those provisions are now codified in Annotated Code of Maryland, Article 33, § 13-101 etseq.
Several fundamental precepts of the campaign finance system in Maryland determine the answer to your inquiry: the recordkeeping requirements, the general requirement of direct contributions, and the limits on individual and aggregate contributions.
A. Recordkeeping Requirements
Integral to the campaign finance system are the recordkeeping and reporting requirements. The treasurer of a candidate or PAC must keep detailed records of all account transactions, including, with limited exceptions, the name and address of every contributor and the amount of each contribution. Article 33, § 13-206(a). For a contribution of $51 or more, a treasurer must issue a receipt to the contributor and maintain a copy of the receipt in the account books of the campaign or PAC.[3] Article 33, § 13-206(b). Complete reports of all campaign transactions must be filed periodically with the State Board of Elections or the appropriate county board of elections. See Article 33, §§ 13-401 et seq.
B. Requirement of Direct Contributions
 1. General Rule
As a general rule, the election code requires that all contributions be made directly by the contributor to the treasurer of a candidate or PAC; no intermediary is permitted. Article 33, § 13-210.[4] With limited exceptions, to make a contribution other than directly to the treasurer is a prohibited practice, punishable by a fine and imprisonment. § 13-602(a)(4), (b).[5]
The requirement of direct contributions, coupled with the obligation of comprehensive recordkeeping, allows public scrutiny of the source and amount of contributions to campaign and PAC accounts. As this Office has previously noted:
 the [Act] is intended to enable an interested person to "audit" all campaign activities in connection with a given election and ascertain, by an examination of both publicly filed records and records required to be maintained by various organizations, all amounts of money and valuable things expended in connection with any given election campaign . . . the purposes for which they were expended and the sources of all such expenditures.
59 Opinions of the Attorney General 282, 293 (1974). These provisions are of crucial importance to the campaign finance system in Maryland. See generally 76 Opinions of the AttorneyGeneral 200, 204-5 (1991).
2. Exception for Payroll Deductions
In 1986 a question arose as to whether a corporation or other business entity could establish a PAC and funnel employee contributions to that PAC by payroll deduction. In a letter of advice, this Office advised that such a mechanism would run afoul of the direct contribution and recordkeeping requirements of the State election code. Letter from Jack Schwartz, Chief Counsel, Opinions and Advice, and Linda Lamone, Assistant Attorney General, to Marie Garber, Administrator, State Administrative Board of Election Laws (August 25, 1986). Noting the public information and audit trail functions of the campaign finance provisions, the letter explained that the election code "does not permit contributions to reach a PAC in a different form or to be given to committees or candidates after an intermediary has commingled the funds of many contributors. Therefore, . . . it is not permissible for employees to check off an amount to be withheld from their payroll and for the corporation to later remit to the PAC in a single, aggregate check the total of all employees' contributions." Such a procedure would have been permitted under the law as it existed in 1986 only if the employer wrote a separate check for each employee who wished to contribute and identified it as a payroll deduction from the employee whose contribution was being forwarded to the PAC. Id.
In light of that advice,[6] the General Assembly modified the law to permit greater flexibility for contributions by payroll deduction and created an exception to the general rule prohibiting an intermediary from pooling political contributions. Chapter 676, Laws of Maryland 1988, now codified at Article 33, § 13-211. That exception permits an employer to pool political contributions made by payroll deduction and then transfer those funds to the treasurer of the designated candidate or PAC. Along with the contribution, the employer must forward to the treasurer a list of all those who contributed, as well as the dates and amounts of the deductions comprising the contribution.
The statute makes clear that an employee must be free to decline to contribute by payroll deduction without fear of reprisal. Employee contributions under a payroll deduction plan must be voluntary and may not be secured by physical force, job discrimination, financial reprisals, or the threat of any such sanctions. In addition, labor union dues or other employment fees required as a condition of employment or union membership cannot be used for political contributions under the payroll deduction exception. Article 33, § 13-211(e)(6).
Nothing in the language of § 13-211 would allow a professional association or other organization to pool its members' political contributions apart from a payroll deduction. Nor does the legislative history of that section reveal any intent to create a broader exception — e.g., to encompass contributions made as part of dues payments to a professional association. In our opinion, this limited exception to the direct contribution requirement cannot be applied outside the context of a payroll deduction by an employer. See District 1199E, National Union of Hospital andHealth Care Employees v. Johns Hopkins Hospital, 293 Md. 343, 360,444 A.2d 448 (1982) (rule of strict construction for statutory exceptions); Patapsco Trailer Service and Sales, Inc. v. EasternFreightways, Inc., 271 Md. 558, 564, 318 A.2d 817 (1974); see alsoWalton v. Davy, 86 Md. App. 275, 285, 586 A.2d 760 (1991).
C. Contribution Limits
Consistent with its constitutional mandate to ensure the integrity of elections, the General Assembly has set limits on the amount of money or other items of value that a person may give to any one candidate or political committee, as well as a limit on the total amount a contributor may give. During any four-year election cycle,[7] an individual or entity may contribute up to $4,000 to any one candidate or PAC. Article 33, § 13-212(a). In the aggregate, such contributions may not exceed $10,000 per contributor. Id. A PAC may transfer up to $6,000 to a candidate or another PAC during an election cycle, with no aggregate limit. Article 33, § 13-213(b). Violation of the contribution and transfer limits of §§ 13-212 and 13-213 is a prohibited practice and constitutes a misdemeanor.[8] Article 33, § 13-603(a).
Against the backdrop of the campaign finance law, we address the questions you have received involving pooled contributions to PACs in the context of a professional association and a labor organization. We illustrate our conclusions below with some hypothetical examples.
 III Political Contributions to Organization-Related PACs
A. Professional Association without Payroll Deduction
As a hypothetical example, the Guinea Pig Breeders Association of Maryland, a professional association, establishes the Guinea Pig Breeders PAC. The Association requires its members to pay $100 in annual dues. The Association wishes to fund the PAC with 20% of the funds it collects for dues — equivalent to $20 for each dues-paying member. May the Association fund the PAC in this manner? Must the Association inform its members that a portion of their dues is earmarked for the PAC? Must the contribution be accompanied by a list of the members who paid the dues that are the source of the contribution? Are there alternative ways that the PAC may be funded by members of the Association?
1. Use of Association Dues
A threshold question is the extent to which an organization may use members' dues to fund the organization's PAC. Whether the Association may use funds derived from membership dues to make a PAC contribution, and whether and how it informs its members of the contribution are matters to be determined under the Association's charter and by-laws, and other State and federal laws that may limit the activities of the Association. The State election code does not purport to answer those questions, so long as the contribution to the PAC is within the limits set forth in the code.
Under the election code, the Association may contribute, in its own name, up to $4,000 to the PAC during a four-year election cycle, subject to the aggregate limit of $10,000 in total contributions. Article 33, § 13-212(a). The PAC treasurer's books would reflect a contribution from the Association, and a receipt for the contribution would be issued to the Association. See
Article 33, § 13-206(a), (b). The Association need not provide the PAC with a list of its members who paid dues, as the PAC contribution is made in the name of the Association. Indeed, if the Association makes such a contribution to its PAC in its own name — even if those funds are derived from membership dues individual members of the Association may also lawfully make their own contributions to the PAC up to the limits set forth in the election code.[9]
If the Guinea Pig Breeders Association has 50 members, it could set aside $20 from the dues of each of its 50 members — or $1,000 — each year for its PAC contribution. Over the four-year election cycle, the total contribution to the PAC would equal the $4,000 statutory limit. Thus, if the Guinea Pig Breeders Association has 50 or fewer dues-paying members during the four-year cycle, it may use 20% of the $100 annual dues to fund a contribution to the PAC. However, if its membership exceeds that number then 20% of the membership dues over the four-year period would exceed the $4,000 limit and the Association may not lawfully contribute that percentage of the membership dues to the PAC. It will have to either reduce the percentage of dues devoted to the PAC contribution or devise some other mechanism to stay within the contribution limits. At the same time, it may encourage individual contributions by its members to the PAC in their own names.
2. Contributions by Individual Association Members
If the members of the Association wish to contribute more than $4,000 in the aggregate to fund the Guinea Pig Breeders PAC, individual members may make their own contributions to the PAC. However, they may not include their contributions as part of their dues payments to the Association, but must send separate checks directly payable to the PAC treasurer. Each member may contribute as much as $4,000 per election cycle to the PAC. The PAC records must reflect the name and address of each contributing member as well as the dates and amounts of the contributions. The PAC treasurer must issue receipts to the individual members. Thus, each member makes a direct contribution to the PAC treasurer; the contributions are not commingled by the Association.
B. Labor Organization with Payroll Deduction
A second common scenario involves the use of payroll deductions both to pay an employee's membership dues and to fund the organization's PAC. As another hypothetical example, the Circus Performers Union, a labor organization, establishes the Circus Performers PAC. The Circus Performers Union requires its members to pay $20 weekly in dues which are collected through payroll deduction. The Union periodically receives a lump sum from each circus that employs its members, consisting of the $20 weekly union dues deducted from the paychecks of its members. The Union wishes to forward a portion of that lump sum to the Circus Performers PAC account in an amount representing 10% of the total dues payment — or $2 for each member's weekly dues payment. What limits apply to such a contribution? What limits would apply if there were a separate payroll deduction to fund the PAC directly?
1. Use of Dues Payroll Deduction to Fund Contribution
Like the Association in the previous example, during each election cycle the Union may contribute to the PAC in its own name
an amount up to a maximum of $4,000, derived from these commingled payroll dues deductions, without running afoul of the election code. Article 33, § 13-212. The Union, not its members, is the contributor, regardless of the fact that its funding derives from membership dues. Again, the books of the PAC's treasurer will reflect a contribution from the Union, and receipts will be issued to the Union. See Article 33, § 13-206. The Union need not provide the PAC with a list of dues-paying members with respect to that contribution.
If the Union designates $2 from each member's weekly dues — or approximately $100 annually per member — for the Union's contribution to the PAC, it may reach the $4000 limit early in the election cycle. For example, if the Union has 40 or more members, it will likely reach the limit during the first year of the cycle. If it wishes to provide more funding for the PAC, it will have to do so by encouraging individual contributions by its members.
2. Contributions by Individual Union Members
Like the Association members in the first example, each member of the Circus Performers Union also may contribute to the PAC up to the $4,000 maximum in the member's own name.[10]
Thus, Union members may send a PAC contribution directly to the PAC treasurer, so that the funds do not pass through the circus or the Union as intermediaries. Receipts will be issued to the individual members, and PAC records will reflect contributions by the individual members.
3. Use of Separate Payroll Deduction to Fund Contributions
PAC contributions by Union members may also be made through the payroll deduction method authorized by Article 33, § 13-211, if the circuses are willing to make such deductions.[11] There must be separate payroll deductions for Union dues and for PAC contributions. Each participating circus would forward the amounts deducted for dues to the Union and the funds deducted for PAC contributions directly to the PAC, along with information as to the identity of the contributors and the dates of their contributions. These contributions would be attributed to the individual Union members and subject to their individual contribution limits. However, the Circus Performers Union could not require its members to authorize such deductions "as a condition of . . . [m]embership in a labor organization." Article 33, § 13-211(e)(6)(i). Individual PAC contributions may be made through payroll deduction only if the Union member voluntarily elects to have an additional deduction for the PAC contribution.
 IV Conclusion
Under the State election code, a professional association or labor organization may not use member dues to fund the association or organization PAC beyond the $4,000 contribution limit. Moreover, a membership organization may not pool individual member contributions, because, as a general rule, political contributions must be made directly to the campaign treasurer and may not be funneled through an intermediary. If the members wish to fund the PAC in excess of the $4,000 limit, individual members must issue checks to the PAC treasurer, separate from any dues payment to the organization.
An exception to the general rule allows an employer to pool employee political contributions made through payroll deduction. Under this exception, the employer deducts the contribution from employees' paychecks and remits a lump sum contribution to the treasurer of the designated PAC, with the names of contributing employees and the date and amount of each contribution. Any payroll deduction for PAC contributions must be separate from a deduction for organization dues and may only be taken if the employee voluntarily authorizes the additional deduction.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Kathleen Hoke Dachille Special Assistant to the Attorney General
_________________________ Robert N. McDonald Chief Counsel Opinions Advice
Elections — Campaign Finance — Funding of PACs by PayrollDeduction
[1] The election code does not define "political action committee." However, the term "political committee" is defined as "a combination of two or more individuals that assists or attempts to assist in promoting the success or defeat of a candidate, political party, or question submitted to a vote at any election." Annotated Code of Maryland, Article 33, § 1-101(y).
[2] The Healy case refers to the Corrupt Practices Act, enacted by Chapter 22, § 172, Laws of Maryland 1908. The Corrupt Practices Act was superseded by the Fair Election Practices Act in 1967, Chapter 64, Laws of Maryland 1967, and by the current law in 1998, Chapter 585, Laws of Maryland 1998.
[3] A receipt must be issued to any individual or organization that makes a single or cumulative contribution of $51 or more. See Article 33, § 13-206(b). The only exception to this rule is for contributions in the form of ticket purchases; receipts must be issued for any individual purchase of $51 or more or for a cumulative purchase of $251 or more. Id. Moreover, a receipt must be issued regardless of the nature or amount of the contribution if the contributor requests one. Id.
[4] That provision reads, in pertinent part:
 Except as provided in § 13-211 of this subtitle . . ., no person other than a candidate shall, to aid or promote the success or defeat of any political party or principle or of any proposition submitted to vote at any public election, or of any candidate for nomination for, or election to public or party office, make a payment or contribution of money or property or incur any liability or promise any valuable thing to any person other than to the treasurer . . . of a candidate or treasurer of a political committee in their official capacity.
See also Article 33, § 13-205(a), ("[a]ll contributions . . . shall be paid over to and made to pass through the hands of the treasurer").
[5] The Division of Candidacy and Campaign Finance of the State Board of Elections explains that "[c]ontributions may not be accepted if the campaign is put on notice that the contribution is from a person or entity other than the maker of the check."Summary Guide at 27.
[6] The legislative file from the 1988 session of the General Assembly indicates that the legislation, introduced as House Bill 716, was designed to modify the conclusion stated in the letter of advice. See Bill Analysis and Floor Report for House Bill 716; see also Statement of Delegate Gordon Before the Senate Economic Matters and Environmental Affairs Committee on House Bill 716; Statement of Maryland Natural Gas on House Bill 716.
[7] A four-year election cycle begins on January 1 following a regular election for Governor. Article 33, § 13-212(a)(3).
[8] The Supreme Court has recently upheld similar state contribution limits against a constitutional challenge. Nixon v.Shrink Missouri Government PAC, 2000 WL 48424 (S. Ct. January 24, 2000).
[9] A member may not give funds to the Association with the intent of having the Association merely pass those funds along to the PAC. See Article 33, § 13-602(a)(4) (prohibiting the making of a contribution to an intermediary rather than directly to the treasurer). However, mere knowledge by the Association members that some, or even a specified percentage or amount, of their mandatory dues will be used as a contribution from the Association to the PAC does not violate the election code. In that instance, it is the Association, not the member, that decides how the funds are used and the Association, not the member, that is the contributor.
[10] The principles discussed in footnote 9 apply here as well.
[11] The same analysis would apply to a professional association and its PAC if funded through a payroll deduction mechanism.
 *Page 38