OPINION.
{¶ 1} The issues before us arise from the failure of a subcontractor to pay plaintiff-appellee/cross-appellant Tri-State Crane Rental, Inc. ("Tri-State") and intervening-plaintiff/cross-appellant Art's Rental Inc. for the work and equipment they had provided for the construction of a floating clamshell dredge located on the property of defendant-appellant/cross-appellee Watson Gravel, Inc. ("WG"). According to the record transmitted for our review, the following facts are not in dispute.
 {¶ 2} WG is the owner of a gravel pit in Hamilton County, Ohio. In September 1999, WG entered into a contract with defendant-appellee American Mechanical Dredge ("AMD") for the sale, design and construction of a clamshell dredge. The dredge constructed was approximately 40 feet high, 30 feet wide, and 70 feet long, and it weighed in excess of 100 tons. The dredge was made of steel and had pontoons that allowed it to float on the pond in a gravel pit. The dredge was not self-propelled, but moved about the water by winches and cables that attached the dredge to the shoreline. The clamshell lifted aggregate from the pit and transferred it to a series of floating conveyors attached to the dredge that moved the aggregate to the shoreline. In order to remove the dredge from the gravel pit, it had to be dismantled and hauled away. Though the parties could not reach an agreement on how many man-hours it would take to dismantle the dredge, the trial court found that it would have taken "enormous human effort."
 {¶ 3} To assist in the construction of the dredge, AMD hired a subcontractor, Construction Aggregate Equipment Co., Inc. ("Con Ag"). In turn, Con Ag entered into a contract with Tri-State, for the use of its cranes and operators, and with Art's Rental, for the use of its construction equipment. Con Ag submitted invoices to AMD in connection with the work on the dredge in the amount of $701,997.53. By January 9, 2001, AMD had paid Con Ag $624,786.23. Although Con Ag received this money from AMD, it did not pay Tri-State for the cranes and operators used for the construction of the dredge from August 2000 to November 2000, and it did not pay Art's Rental for the use of its equipment during the months of August 2000 and January 2001.
 {¶ 4} In March 2001, Con Ag filed a Notice of Chapter 7 Bankruptcy. At that time, it owed Tri-State $33,355 and Art's Rental $34,477.61. In February 2001 and March 2001, respectively, Tri-State and Art's Rental filed mechanic's liens against WG's property in Hamilton County. It is undisputed that the affidavit for each mechanic's lien procedurally complied with R.C. Chapter 1311.
 {¶ 5} In April 2001, Tri-State sued WG and AMD, alleging, among other things, a right to foreclose on its mechanic's lien, unjust enrichment and violations of Ohio's Prompt Pay Act. Two months later, Art's Rental moved to intervene in the action and filed an accompanying complaint seeking, inter alia, to foreclose on its lien. There was no objection to the intervention, and in July 2001, the trial court granted the motion to intervene. Eventually, all parties moved for summary judgment. The trial court granted summary judgment in favor of WG and AMD with respect to the Prompt Pay Act and unjust-enrichment claims. But it also granted summary judgment in favor of Tri-State, holding that Tri-State could foreclose on its lien because the dredge was an "improvement" subject to Ohio's mechanic's lien law. The trial court denied Art's Rental's motion for summary judgment, holding that it had failed to intervene in the action in a timely manner, and dismissed its claims. WG, Tri-State and Art's Rental have each appealed the trial court's judgment under separate case numbers. We have consolidated the appeals for purposes of this decision.
 WG Appeal {¶ 6} In a single assignment of error, WG asserts that the trial court erred by granting summary judgment in favor of Tri-State on the basis of its finding that the dredge was an improvement subject to a mechanic's lien. WG argues that the dredge was not an improvement upon its property because the dredge was not a structure. Thus, WG maintains that the mechanic's lien was invalid. Because we hold that the dredge in question was a structure, we affirm the summary judgment granted to Tri-State.
 {¶ 7} R.C. 1311.02 grants a lien to a subcontractor or materialman who performs work or furnishes materials to a contractor or other subcontractor in connection with anyimprovement upon real property. Pursuant to R.C. 1311.01(J), "improvement" "means constructing, erecting, altering, repairing, demolishing, or removing any building or appurtenance thereto, fixture, bridge or other structure * * *." The term "structure" is not defined in R.C. Chapter 1311, so we use its ordinary and common meaning.[1] Black's Law Dictionary defines "structure" as "any construction, production, or piece of work artificially built up or composed of parts purposefully joined together." The Ohio Supreme Court, in construing a tax statute, has defined a structure as "an edifice or building; an improvement."[2] But edifice is defined as a "massive structure," which does not really help our analysis, except to inform us that structures are, perhaps, usually large. Thus, we rely on the definition set forth in Black's Law Dictionary.
 {¶ 8} The term "structure" has also been broadly defined in Ohio case law, albeit not with respect to Ohio's mechanic's lien law.[3] For example, structural steel, aluminum turnstile rails, and concrete piers and foundations used for amusement park rides have been found to be structures, as well as the antennas of a ham radio when they are attached to the outside of the owner's condominium.[4] Additionally, a four-mile conveyor belt that was part of an electric plant and necessary to the operation of the plant was also found to be a structure.[5]
In all of these instances, the structures were affixed to the land.
 {¶ 9} Like the other items that were found to be structures, the dredge in this case was affixed to the land. It was attached to the shoreline by winches and cables, and it floated on the pond in the gravel pit. The dredge was also massive, weighing over 100 tons. It was made up of seven vertical and two horizontal steel beams, a clamshell, and conveyor belts that were all purposefully joined together. Further, the dredge was necessary to the operation of the gravel pit. The dredge was used to dig up the aggregate, which was then deposited onto conveyor belts that transported it to the shoreline. The conveyor belts were in turn connected to screening towers that segregated the aggregate. The dredge was integrated into the complex that comprised WG's gravel-pit operations.[6] Under these circumstances, we hold, as a matter of law, that the dredge was a structure that constituted an improvement subject to a mechanic's lien. Accordingly, WG's single assignment of error is overruled, and the judgment of the trial court is affirmed in the appeal numbered C-030392.
 Tri-State Appeal {¶ 10} In its appeal, Tri-State asserts three assignments of error. In its first assignment, Tri-State maintains that the trial court erred in failing to award it prejudgment interest. We disagree. With respect to mechanic's liens, prejudgment interest pursuant to R.C. 1343.03 may only be awarded where privity of contract exists between the contractor holding the lien and the owner of the property benefiting from the materials and labor provided.[7] Here, Tri-State was not in privity of contract with WG. Instead, Tri-State provided equipment and operators to assist in constructing the dredge under a contract with Con Ag, a subcontractor who was not a party to this action. Additionally, we are not persuaded that the Ohio Supreme Court's decision inRoyal Electric Constr. Corp. v. Ohio State University,[8]
which held that the sole test for determining whether to award prejudgment interest is "what would make the prevailing party whole," is applicable here, because in Royal Electric, unlike the case at bar, the parties were in privity of contract. Accordingly, Tri-State's first assignment of error is overruled.
 {¶ 11} In its second and third assignments, respectively, Tri-State argues that the trial court erred in denying its motion for summary judgment on its Prompt Pay Act claim against AMD and its unjust-enrichment claim against WG. Under both of these claims, Tri-State was requesting the same amount owed to it under its mechanic's lien. At oral argument before this court, Tri-State agreed that these two assignments would become moot if this court upheld the trial court's decision allowing Tri-State to foreclose on its mechanic lien. Since we have affirmed that decision, Tri-State's second and third assignments of error have become moot. Thus, the judgment of the trial court is affirmed in the appeal numbered C-030408.
 Art's Rental Appeal {¶ 12} In its single assignment of error, Art's Rental maintains that the trial court erred in denying its motion for summary judgment. The trial court held that Art's Rental had failed to timely "commence suit" against WG after being served with a notice to commence suit pursuant to R.C. 1311.11. We disagree.
 {¶ 13} R.C. 1311.11(A) provides that a party who has been adversely affected by a mechanic's lien may serve notice to commence suit upon the party holding the lien. The party that makes the demand that suit be commenced has 30 days from service to execute an affidavit describing how service was accomplished, to attach a copy of the notice to commence suit to the affidavit, and then to file that document with the county recorder's office.[9] Once the affidavit has been filed, the lienholder has 60 days to "commence suit." Here, WG completed service and filed its affidavit with the county recorder's office by May 7, 2001. On June 19, 2001, Art's Rental moved to intervene, filing its "intervening complaint" to foreclose on its lien. None of the parties objected to the intervention, and the trial court granted the motion on July 13, 2001.
 {¶ 14} In its decision denying Art's Rental's motion for summary judgment, the trial court held that Art's Rental had failed to file its complaint within 60 days of the filing of WG's affidavit of notice to commence suit with the county recorder's office. The trial court, citing Civ.R. 3(A), interpreted "to commence suit" to mean the filing of a complaint, not a motion. But Art's Rental could not have formally filed its complaint until its motion to intervene had been granted by the trial court, an act over which it had no control. Instead, Art's Rental filed its motion to intervene and the proposed complaint within the 60-day time period required by R.C. 1311.11(B) and further served all the parties without delay.
 {¶ 15} Under these circumstances, we hold that the filing of a motion to intervene within the 60-day period constituted the commencement of a suit against WG because it substantially complied with the statute. We may liberally construe R.C. Chapter 1311 to effectuate the remedial purpose of the statute, which is the payment of contractors, subcontractors and material suppliers for their labor and supplies, when the lienholder's affidavit for a mechanic's lien procedurally complies with the statute, as Art's Rental's affidavit did here.[10] Accordingly, Art's Rental's filing of a motion to intervene, along with the proposed complaint, within the 60-day period complied with the section of the statute directing it to "commence suit" against the party adversely affected by the lien.
 {¶ 16} Finally, we note that other jurisdictions have held that the filing of a motion to intervene commences an action when the motion is filed prior to the statute of limitations but the entry ordering the intervention and the formal filing of the complaint occurs after the limitations period has run.[11]
 {¶ 17} We sustain Art's Rental's assignment of error, reverse that part of the judgment denying relief to Art's Rental in the appeal numbered C-030424, and remand the case for further proceedings in accordance with this decision.
Judgment accordingly.
Doan, P.J., and Sundermann, J., concur.
[1] See R.C. 1.42.
[2] Litton Systems, Inc. v. Tracy, 88 Ohio St.3d 568, 572,2000-Ohio-427, 728 N.E.2d 389, quoting the Dictionary of Real Estate Appraisal (1984) 294.
[3] See Marblehead v. Menier (Nov. 9, 1995), 6th Dist. No. OT-95-036, fn. 2, citing Monday Villas Property Owners Assn. v.Barbe (1991), 75 Ohio App.3d 167, 170, 598 N.E.2d 1291.
[4] Kings Entertainment Co. v. Limbach (1992),63 Ohio St.3d 369, 588 N.E.2d 777; Monday Villas Property Owners Assn. v.Barbe (1991), 75 Ohio App.3d 167, 598 N.E.2d 1291.
[5] See Ohio Power Co. v. Deist (1951), 154 Ohio St. 473,96 N.E.2d 771.
[6] See Adiar v. Koppers Co., Inc. (C.A. 6, 1984),741 F.2d 111 (under Ohio law, a coal-handling conveyor was an "improvement" because it was an integral part of an industrial complex).
[7] Shaker Savings Assn. v. Greenwood Village, Inc. (1982),7 Ohio App.3d 141, 454 N.E.2d 984; Blanchaster Lumber Supply,Inc. v. White (1989), 61 Ohio Misc.2d 466, 472, 580 N.E.2d 81;Maintenance Unlimited Inc. v. Salem (1984), 18 Ohio App.3d 29,480 N.E.2d 113.
[8] (1995), 73 Ohio St.3d 110, 652 N.E.2d 687.
[9] R.C. 1311.11(B)(1) through (3).
[10] Wayne Bldg. Loan Co. of Wooster v. Yarborough (1967),11 Ohio St.2d 195, 217, 228 N.E.2d 841.
[11] See Jack v. Travelers Ins. Co. (E.D.Mich. 1958),22 F.R.D. 318, affirmed (C.A. 6, 1960), 277 F.2d 736; Farris v.Sears, Roebuck Co (D.Ky. 1976), 415 F. Supp. 594; Callaway v.Smith (1960), 67 N.M. 283, 354 P.2d 999.