**MID–OHIO MECHANICAL, INC., Appellant,**

v.

**CARDEN METAL FABRICATORS, INC., Appellee.**

[Cite as *Mid–Ohio Mechanical, Inc. v. Carden Metal Fabricators, Inc.*, 169 Ohio App.3d 225, 2006-Ohio-5293.]

Court of Appeals of Ohio,
Fifth District, Guernsey County.

No. 2006–CA–13.

Decided Oct. 6, 2006.

Donald W. Gregory and Stuart W. Harris, for appellants.

David Wicklund, John M. Mackay, Robert A. Koenig, and Michael J. Podolsky, for appellee.

Albert J. Lucas and Stanley J. Dobrowski, for amicus curiae Mechanical Contractor Association of Ohio.

R. Russell O'Rourke and Michael J. Warrell, for amicus curiae American Subcontractor Association.

Gwin, Judge.

{¶ 1} Plaintiff, Mid–Ohio Mechanical, Inc., appeals a summary judgment of the Court of Common Pleas of Guernsey County, Ohio, granted in favor of Eisenmann Corporation. Mid–Ohio assigns two errors to the trial court:

{¶ 2} "I. The trial court erred in concluding that the mechanic's lien of appellant was barred as a matter of law, and in granting summary judgment to appellee, where: (A) There were (at a minimum) genuine facts in dispute as to whether the equipment and machinery provided constitute 'materials' under R.C. 1311.01(i); (B) There was a genuine issue of fact in dispute as to whether the labor and work provided improved the property; (C) There was a genuine issue

of fact in dispute as to whether the improvements were fixtures; and (D) There was an admission by appellee that appellant provided 'work' to the improvement.

{¶ 3} "II. The trial court erred in concluding that the mechanic's lien of appellant was barred as a matter of law, and in granting summary judgment to appellee, where: (A) The definition of 'materials' in R.C. 1311.01(I) plainly covers equipment and machinery; (B) There was an abundance of evidence demonstrating that Mid–Ohio provided labor, work and materials to the improvement, which is lienable under R.C. 1311.02; and (C) The tax cases cited by appellee and apparently relied upon by the court have no application."

{¶ 4} Mid–Ohio's statement pursuant to Loc.R. 9 asserts the trial court erred as a matter of law and also because there were genuine issues of material fact.

{¶ 5} Certain facts are undisputed. LDM/Plastech ("LDM") is the owner of a factory in Byesville, Ohio. LDM contracted with defendant appellee Eisenmann Corporation to upgrade the paint line in the factory. The paint line applies high-tech coatings to car bumpers. The overall project included replacing a cure oven and its platform under the roof with an oven and platform mounted above the roof, replacing existing paint-sludge removal equipment, replacing and adding paint-booth scrubbers and other pollution control equipment, replacing and adding robotic paint sprayers, moving and extending the conveyor, and numerous other items.

{¶ 6} Eisenmann is an Illinois process-engineering firm that designs, manufactures, buys, sells, and installs factory machinery and equipment. Eisenmann subcontracted with Carden Metal Fabricators, Inc. to remove old equipment and install new equipment. Carden, in turn, subcontracted with appellant Mid–Ohio to work on structural steel beams and columns, on a roof, and on oven modules installed and welded to the structural steel.

{¶ 7} Before the project was completed, Carden went out of business. Eisenmann then issued purchase orders to Mid–Ohio to have Mid–Ohio continue to work on Carden's project. Shortly thereafter, Eisenmann asked Mid–Ohio to cease work.

{¶ 8} Carden had not paid Mid–Ohio in full, so Mid–Ohio filed a mechanic's lien for $768,396.67. Eisenmann also filed a mechanic's lien for $897,052 and a second one for $1,599,269.

{¶ 9} Thereafter, LDM insisted Mid–Ohio's lien be bonded off to protect its property. Under an indemnity arrangement, Eisenmann provided the cash deposit, and Mid–Ohio's claim transferred to the deposit, freeing its lien against the property.

{¶ 10} Mid–Ohio then voluntarily dismissed all claims against LDM and addressed its claim to the cash bond that Eisenmann had posted. Eisenmann

argued that when Mid–Ohio dismissed the other defendants, any and all parties who might be liable to Mid–Ohio were gone from the suit. Eisenmann moved the court to release the cash deposit held in escrow. The court overruled Eisenmann's motion and continued the escrow. Eisenmann asserted that Mid–Ohio's work was defective and that it was not entitled to the funds.

{¶ 11} The trial court's judgment merely stated that Eisenmann had met its burden on the summary judgment, and Mid–Ohio had not.

{¶ 12} R.C. 1311.02 states: "Every person who performs work or labor upon or furnishes material in furtherance of any improvement undertaken by virtue of a contract, express or implied, with the owner, part owner, or lessee of any interest in real estate, or his authorized agent, and every person who as a subcontractor, laborer, or materialman, performs any labor or work or furnishes any material to an original contractor or any subcontractor, in carrying forward, performing, or completing any improvement, has a lien to secure the payment therefor upon the improvement and all interests that the owner, part owner, or lessee may have or subsequently acquire in the land or leasehold to which the improvement was made or removed."

{¶ 13} R.C. 1311.01 sets forth definitions:

{¶ 14} "(D) 'Subcontractor' includes any person who undertakes to construct, alter, erect, improve, repair, demolish, remove, dig, or drill any part of an improvement under a contract any person other than the owner, part owner, or lessee.

{¶ 15} " * * *

{¶ 16} "(I) 'Materials' means all products and substances including, without limitation, any gasoline, lubricating oil, petroleum products, powder, dynamite, blasting supplies, and other explosives, tools, equipment, or machinery furnished in furtherance of an improvement.

{¶ 17} " * * *

{¶ 18} "(J) 'Improvement' means constructing, erecting, altering, repainting, demolishing, or removing any building or appurtenance thereto, fixture, bridge, or other structure, and any gas pipeline or well including, but not limited to, a well drilled or constructed for the production of oil or gas; the furnishing of tile for the drainage of any lot or land; the excavation, cleanup, or removal of hazardous waste material or waste from real property; the enhancement or embellishment by seeding, sodding, or planting any shrubs, trees, plants, vines, small fruits, flowers, or nursery stock of any kind; and the grading or filling to establishing grade."

{¶ 19} We note at the outset that the Revised Code sets forth certain requirements that must be strictly performed to perfect the lien. However, questions regarding the value of the work and any setoffs are issues concerning the value of the lien and not the enforceability of the lien; see *Warne v. Bamfield*, Guernsey App. No. 2005–CA–33, 2006-Ohio-850, 2006 WL 438674. Under the Revised Code's definition of improvement, it is not necessary for the work to add value to the property, so the value of the lien is irrelevant for this analysis.

{¶ 20} Eisenmann argues that Mid–Ohio has no mechanic's lien for work or materials supplied for personal property under the current version of the statute. This argument presents two separate issues: the question of the materials and labor and the question of whether the property is personal property.

{¶ 21} The statute was amended in 1991. Am.Sub.H.B. No. 238, 143 Ohio Laws, Part III, 3676, 3680. Prior to 1991, the Revised Code and case law allowed mechanic's liens to attach to personal property even when there was no underlying real property. Specifically, the statute used the words "mill and manufacturing" and "upon the material or machinery." The current version of the statute substitutes the word "materials." Eisenmann argues that the only materials that are lienable are items incorporated into an improvement, consumed in making the improvement, or in operating construction machinery to make the improvement.

{¶ 22} We find this too narrow a reading of the statute. The Revised Code provides that anyone who furnishes materials or performs labor or work on an improvement by constructing, erecting, altering, repainting, demolishing, or removing any building or appurtenance thereto, fixture, bridge, or other structure has a lien on the property. We conclude that the legislature intended to secure the claims of all persons who furnish labor or materials used in or for improvements to property.

{¶ 23} The second issue presented here is whether the work and materials Mid–Ohio furnished were in furtherance of an improvement to a building or appurtenance thereto, a fixture, a bridge, or other structure, or to personal property.

{¶ 24} Eisenmann first argues that the improvement does not qualify as a fixture. Eisenmann cites *Teaff v. Hewitt* (1853), 1 Ohio St. 511, which devised a three-part test to determine whether the disputed material is a fixture: (1) actual annexation to the realty or something appurtenant thereto; (2) improvement appropriate to the use or purpose of the part of the realty with which it is connected; and (3) the intention of the party making the annexation to make the article a permanent accession to the freehold, this intention being inferred from

the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of the annexation, and the purpose or use for which the annexation has been made.

{¶ 25} The Supreme Court of Ohio recently cited *Teaff* in *Wireman v. Keneco Distributors, Inc.* (1996), 75 Ohio St.3d 103, 661 N.E.2d 744. There, the Supreme Court applied the *Teaff* test to determine whether an item was personal property or a fixture for purposes of a products-liability action. The Supreme Court held that the article in question, a ventilation system attached to above-ground gasoline storage tanks, was not a fixture. The tank had been placed at the site of an old Marathon Oil service station being used as bulk plant. Marathon Oil lacked the requisite intent to make the system a permanent addition to the bulk plant, because it had merely attached the system to four above-ground storage tanks. In fact, Marathon had sold the tanks and ventilation system to another company, with a provision obligating the purchaser to remove the above-ground storage tanks if required by law. The Supreme Court concluded that Marathon had never intended the tanks and the attached ventilation system to become a permanent part of the premises.

{¶ 26} Eisenmann asserts that the paint line could be detached from the factory, and this is probably true of any structure, temporary or permanent, given enough time and money. A good part of Eisenmann's challenge to Mid–Ohio's lien involved whether the welding, bolting, and other construction were done according to specifications and in a workmanlike manner. The record is also clear that LDM had intended to use the finished structure for its manufacturing process.

{¶ 27} Regarding whether it is essential to the use or purpose of the realty, Eisenmann argues that the paint line is personal property because it is related to the owner's current business and is not essential to the use or purpose of the realty. Here, the paint line is integrated into the factory. Again, under Eisenmann's analysis, this argument could be extended to the entire building, because the factory is devoted to a particular business and could be demolished and the real estate used for some other purpose.

{¶ 28} Eisenmann also argues that the record shows no intention of permanently affixing the equipment to the land. *Teaff* held that the intention of the party making the annexation to make the article a permanent accession to the freehold can be inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of the annexation, and the purpose or use for which the annexation has been made. Here the work was done on a contract with the owner of the property, welding and bolting items, including structural steel, to the building, so that the owner can produce the parts it needs to conduct its business.

{¶ 29} As stated supra, the Supreme Court applied the *Teaff* test to a products-liability case. All parties agree that there is very little case law directly on point analyzing the current version of R.C.1311.02. All parties cite *Tri–State Crane Rental v. Watson Gravel, Inc.*, Hamilton App. Nos. C–030392, C–030408, and C–030424, 2004-Ohio-1262, 2004 WL 534829.

{¶ 30} *Tri–State Crane* centered on a clamshell dredge used in a gravel pit. The dredge was approximately 40 feet high, 30 feet wide, and 70 feet long and weighed in excess of 100 tons. The dredge was made of steel and had pontoons so that it would float on the surface of the pond in the gravel pit. The dredge was attached to the shoreline with cables and was moved about the water with winches. The dredge lifted aggregate from the pit and transferred it to a series of floating conveyors attached to the dredge, which transported the aggregate to the shore. In order to remove the dredge from the gravel pit, it would have been necessary to dismantle it at great effort.

{¶ 31} One of the issues in *Tri–State Crane* was whether the dredge was an improvement subject to mechanic's lien. The Hamilton County Court of Appeals analyzed the definitions in R.C. 1311.01 and held that an improvement was, inter alia, constructing or erecting any building or appurtenance thereto, fixture, bridge, or other structure. The court did not apply the *Teaff* test to determine whether the dredge was a fixture, but instead analyzed it as a structure. The court noted the term "structure" is not defined in R.C. 1311, so it consulted Black's Law Dictionary and case law on different but comparable issues. The First District Court of Appeals noted that structural steel, aluminum turn-style rails, concrete piers, and foundations for amusement-park rides have been found to be structures, as well as antennas for ham radios when attached to a condominium. A four-mile conveyor belt that was part of an electric plant and necessary to the operation of the plant was also found to be a structure, and in all these instances, the structures were fixed to the land. *Tri–State Crane*, 2004-Ohio-1262, ¶ 8.

{¶ 32} *Tri–State Crane* noted that the dredge was affixed to the land by means of the winches and cables, and it floated on the surface of the pond. The court described it as massive and made up of seven vertical and two horizontal steel beams, a clamshell, and conveyor belts all purposefully joined together. The court held that the dredge was necessary to the operation of the gravel pit, because it was used to dig up the aggregate and convey it to the shoreline. The conveyor belts from the dredge were connected to screening towers used to segregate the aggregate. The court held that the dredge was fully integrated into the complex that compromised the gravel-pit operations. The court concluded as a matter of law, the dredge was a "structure" and constituted an

improvement to the land subject to a mechanic's lien. It appears to this court that the dredge may well have met the definition of a fixture as well.

{¶ 33} The Revised Code lists not only buildings, fixtures, and structures, but also adds appurtenances, bridges, and gas and oil pipelines and wells. The use of the word "appurtenance" is instructive. The Revised Code does not define "appurtenance." Black's Law Dictionary defines an appurtenance as "that which belongs to something else; an adjunct; an appendage. Something annexed to another thing more worthy as principal, and which passes as incident to it, as a right of way or other easement to land; an outhouse, barn, garden, or orchard, to a house or messuage. * * * An article adapted to the use of the property to which it is connected, and which was intended to be a permanent accession to the freehold. A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way, or watercourse, or of a passage for light, air, or heat from or across the land of another." Citation omitted. Black's Law Dictionary (5th Ed.1979) 94.

{¶ 34} We hold that the use of such general and inclusive words as "structure" and "appurtenance" demonstrates the legislature's intention to permit mechanic's liens in a broad variety of improvements to real estate. Ohio has had mechanic's lien statutes since at least 1823. A mechanic's lien is often the only security for payment a subcontractor or material man has for material and work provided to a contractor. The legislature intended to provide all those involved in the construction industry, from the project owner to the subcontractors and material men, the stability and consistency necessary for them all to conduct their business.

{¶ 35} We hold that the work and materials Mid–Ohio furnished are, as a matter of law, improvements to a building, fixture, appurtenance, or other structure. We hold that Mid–Ohio's lien is enforcible as a matter of law on the undisputed facts and the applicable statutory definitions and requirements.

{¶ 36} The first assignment of error is sustained. The second assignment of error is overruled.

{¶ 37} For the foregoing reasons, the judgment of the Court of Common Pleas of Guernsey County, Ohio, is reversed, and the cause is remanded to that court for further proceedings in accord with law and consistent with this opinion.

Judgment reversed
and cause remanded.

WISE, P.J., and BOGGINS, J., concur.